In re the Commitment of Dennis H.,
State of Wisconsin, Petitioner-Respondent,

v.

Dennis H., Respondent-Appellant.

Supreme Court

*No. 01–0374. Oral argument May 1, 2002.—Decided July 12, 2002.*

2002 WI 104

(Also reported in 647 N.W.2d 851.)

360

For the respondent-appellant there were briefs by *Ellen Henak,* assistant state public defender, and *Thomas K. Zander,* Milwaukee, and oral argument by *Ellen Henak.*

For the petitioner-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

An amicus curiae brief was filed by *Theresa M. Hottenroth* and *Whyte Hirschboeck Dudek S.C.,* Madison, on behalf of the Treatment Advocacy Center, and there was oral argument by *Mary Zdanowicz.*

An amicus curiae brief was filed by *Mary Dianne Greenley,* Madison, on behalf of the Wisconsin Coalition for Advocacy, Inc.

An amicus curiae brief was filed by *Robert Theine Pledl* and *Schott, Bublitz & Engel, S.C.,* Brookfield, on behalf of the American Civil Liberties Union of Wisconsin Foundation.

An amicus curiae brief was filed by *Michael J. Bachhuber,* Milwaukee, on behalf of the Grassroots Empowerment Project, Inc.

An amicus curiae brief was filed by *Richard G. Niess* and *Coyne, Niess, Schultz, Becker & Bauer, S.C.,* Madison, and *Kenneth J. Kress,* Iowa City, Iowa, on behalf of Kenneth J. Kress.

An amicus curiae brief was filed by *Herbert S. Bratt,* Milwaukee, and *Mark L. Adams* and *Melanie E. Cohen,* Madison, on behalf of the Wisconsin Psychiatric Association, Inc., and the State Medical Society of Wisconsin.

An amicus curiae brief was filed by *Mary Dianne Greenley,* Madison, on behalf of the Wisconsin Coalition for Advocacy, Inc., and the Judge David L. Bazelon Center for Mental Health Law.

¶ 1. DIANE S. SYKES, J. This case is before the court on certification from the court of appeals, which we accepted to resolve a single issue of law: whether the fifth standard of dangerousness in the involuntary civil commitment statute, Wis. Stat. § 51.20(1)(a)2.e. (1999–2000), is constitutional. We hold that it is.

¶ 2. Dennis H. is the subject of this mental health commitment, and he has schizophrenia. His father, his psychiatrist, and his case manager filed a three-party petition in Milwaukee County Circuit Court seeking to commit him pursuant to Wis. Stat. § 51.20(1)(a)

(1999–2000)[1], because he was exhibiting behavior that had previously led to his hospitalization in critical condition for kidney failure.

¶ 3. Dennis H. moved to dismiss, arguing that the fifth standard of dangerousness, Wis. Stat. § 51.20(1)(a)2.e., is unconstitutional.[2] The circuit court denied the motion, a jury found Dennis H. dangerous under the fifth standard, and he was committed. He appealed, and the court of appeals certified the case to this court.

¶ 4. Dennis H. contends that the fifth standard is facially unconstitutional because it violates the due process and equal protection guarantees of the federal and state constitutions and is also vague and overbroad.[3] More specifically, he argues that the statute is constitutionally infirm because it lacks a requirement

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[2] It was determined at the probable cause hearing that none of the first four definitions of dangerousness sufficient for commitment under Wis. Stat. § 51.20(1)(a)2.a.-d. applied.

[3] The Fourteenth Amendment to the United States Constitution states: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article I, Section I of the Wisconsin Constitution states: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed."

"[T]he due process and equal protection clauses of the Wisconsin Constitution are the substantial equivalents of their

of imminent dangerousness to self or others, and because it allows commitment upon a finding of a substantial probability of something less than physical harm, to wit, mental or emotional harm.

█

¶ 5. A facial constitutional challenge to a statute is an uphill endeavor. The state has a well-established, legitimate interest under its parens patriae power in providing care to persons unable to care for themselves, and also has authority under its police power to protect the community from mentally ill persons determined to be dangerous. *Heller v. Doe,* 509 U.S. 312, 332 (1993) (citing *Addington v. Texas,* 441 U.S. 418, 426 (1979)). The general rule, of course, is that any legislative enactment carries a presumption of constitutionality. *State v. Carpenter,* 197 Wis. 2d 252, 263–64, 541 N.W.2d 105 (1995).

¶ 6. Furthermore, "[w]e deal here with issues of unusual delicacy, in an area where professional judgments regarding desirable procedures are constantly and rapidly changing." *Heller,* 509 U.S. at 333 (discussing mental health commitments) (quoting *Smith v. Organization of Foster Families for Equality & Reform,* 431 U.S. 816, 855–856 (1977)). "In such a context, restraint is appropriate on the part of courts called upon to adjudicate whether a particular procedural scheme is adequate under the Constitution." *Id.* We conclude that the fifth standard is not unconstitutionally vague or overbroad, and does not violate due process or equal protection.

respective clauses in the federal constitution." *State v. McManus,* 152 Wis. 2d 113, 130, 447 N.W.2d 654 (1989).

## I

¶ 7. On June 23, 2000, Dennis H.'s father, psychiatrist, and case manager filed a petition in Milwaukee County Circuit Court to have him involuntarily committed for treatment under Wis. Stat. § 51.20(1)(a). Dennis H. suffers from schizophrenia and, due to medication noncompliance, had previously been hospitalized in acute renal failure and electrolyte imbalance brought on by extreme and rapid weight loss and dehydration.

¶ 8. Dennis H. sought to have the petition dismissed, arguing that the fifth standard of dangerousness as grounds for involuntary commitment, Wis. Stat. § 51.20(1)(a)2.e., violates the federal and state constitutions. The circuit court, the Honorable Michael J. Dwyer, rejected Dennis H.'s constitutional challenge and denied the motion to dismiss.

¶ 9. Noting that the state has a legitimate interest under its police and parens patriae powers in protecting society and the mentally ill, the circuit court concluded that the fifth standard constituted a "new description of dangerousness" sufficient to justify commitment. The circuit court viewed the fifth standard's new definition as encompassing a requirement of present dangerousness, albeit "in a little different vocabulary" than the other four. Because the fifth standard did not dispense with dangerousness as a precondition of commitment, but merely defined it in a different way, the circuit court found it "constitutionally appropriate."[4]

---

[4] Dennis H. asserts that Judge Dwyer recast the statute to require evidence of "imminent physical dangerousness." The Honorable Victor Manian presided at trial, however, and instructed the jury precisely according to the text of the statute.

¶ 10. A probable cause hearing was held. Following the testimony of two doctors, the first four standards of dangerousness were determined to be inapplicable, and the case proceeded to trial on the fifth standard only.

¶ 11. A jury trial was held on July 24–25, 2000, before the Honorable Victor Manian. The jury was instructed on the statutory elements of the fifth standard, and returned a verdict finding Dennis H. dangerous. The circuit court ordered Dennis H. committed for a period of six months. Pursuant to stipulation, this was later extended for another six months. Dennis H. appealed the order of commitment, and the court of appeals certified the case to this court.

## II

¶ 12. The constitutionality of a statute is a question of law which this court reviews de novo. *State v. Janssen,* 219 Wis. 2d 362, 370, 580 N.W.2d 260 (1998). The party challenging a statute must establish its unconstitutionality beyond a reasonable doubt. *State v. McManus,* 152 Wis. 2d 113, 129, 447 N.W.2d 654 (1989). "Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality." *Carpenter,* 197 Wis. 2d at 263–64 (citing *McManus,* 152 Wis. 2d at 129 (citations and quotation marks omitted in original)). A court does not evaluate the merits of the legislature's economic, social, or political policy choices, but is limited to considering whether the statute violates some specific constitutional provision. *State ex rel. Hammermill Paper Co. v. La Plante,* 58 Wis. 2d 32, 46–47, 205 N.W.2d 784 (1973).

¶ 13. We have previously noted that the United States Supreme Court has declined to prescribe "strict boundaries for legislative determinations of what degree of dangerousness is necessary for involuntary commitment," because "[s]ubstantive as well as procedural limitations on a state's traditional power to commit the dangerously mentally ill vary widely from jurisdiction to jurisdiction." *State v. Post,* 197 Wis. 2d 279, 312, 541 N.W.2d 115 (1995), *cert. denied,* 521 U.S. 1118 (1997) (footnote omitted) (citing *Jackson v. Indiana,* 406 U.S. 715, 736–37 (1972)). Because of "the uncertainty endemic to the field of psychiatry . . . particular deference must be shown to legislative decisions in that arena." *Id.* (citing *Jones v. United States,* 463 U.S. 354, 364 n.13 (1983)). Accordingly, courts generally proceed with restraint in this complex, delicate, and policy-sensitive area, deferring to the procedural scheme the legislature has chosen. *See Heller,* 509 U.S. at 332; *Smith,* 431 U.S. at 855–856; *Post,* 197 Wis. 2d at 312.

### III

¶ 14. We start with the text of the statute at issue. Section 51.20 of the Wisconsin Statutes governs involuntary civil commitments for mental health treatment and contains five different definitions or standards of dangerousness for purposes of involuntary commitment. The so-called "fifth standard," Wis. Stat. § 51.20(1)(a)2.e., was enacted in 1995, *see* 1995 Wis. Act 292, and provides that "an individual, other than an individual who is alleged to be drug dependent or developmentally disabled," is considered "dangerous" if:

[A]fter the advantages and disadvantages of and alternatives to accepting a particular medication or treat-

372

ment have been explained to him or her and because of mental illness, evidences either incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, or substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment; and evidences a substantial probability, as demonstrated by both the individual's treatment history and his or her recent acts or omissions, that the individual needs care or treatment to prevent further disability or deterioration and a substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety and suffer severe mental, emotional or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions. The probability of suffering severe mental, emotional or physical harm is not substantial under this subd.2.e. if reasonable provision for the individual's care or treatment is available in the community and there is a reasonable probability that the individual will avail himself or herself of these services or if the individual is appropriate for protective placement under § 55.06. Food, shelter or other care that is provided to an individual who is substantially incapable of obtaining food, shelter or other care for himself or herself by any person other than a treatment facility does not constitute reasonable provision for the individual's care or treatment in the community under this subd.2.e. The individual's status as a minor does not automatically establish a substantial probability of suffering severe mental, emotional, or physical harm under this subd.2.e.

Wis. Stat. § 51.20(1)(a)2.e.

¶ 15. Dennis H. argues that the fifth standard: (1) is unconstitutionally vague and overbroad; (2) violates his right to equal protection of the law by allowing for commitment under circumstances different than those existing under any of the four other standards; and (3) violates his right to substantive due process by allowing commitment without requiring evidence of a risk of imminent physical harm to himself or others. We disagree, and uphold the statute against his vagueness, overbreadth, equal protection, and due process challenges.

## *Vagueness*

¶ 16. The statute is long and complex. Neither attribute makes it unconstitutional, however, for neither is the proper measure of a statute's constitutionality. We have previously explained that:

> The principles underlying the void for vagueness doctrine . . . stem from concepts of procedural due process. Due process requires that the law set forth fair notice of the conduct prohibited or required and proper standards for enforcement of the law and adjudication. Based upon these concepts of due process, a statute is void for vagueness if it fails to give notice to those wishing to obey the law that their conduct falls within the proscribed area, or if it fails to provide those who must enforce and apply the law objective standards with which to do so.

*In re Commitment of Curiel,* 227 Wis. 2d 389, 414–15, 597 N.W.2d 697 (1999) (quoting *State v. Popanz,* 112 Wis. 2d 166, 172–73, 332 N.W.2d 750 (1983)) (citations and internal quotation marks omitted).

■

¶ 17. Our task, then, is to determine whether the statute provides objectively discernible standards by

which commitment decisions can be made. In other words, "we must determine whether the statute fails to be sufficiently definite to allow judges, juries and expert witnesses to apply (its) terms . . . objectively to the question before them in order to determine whether to commit the defendant without having to create or apply their own standards." *Curiel,* 227 Wis. 2d at 415 (citing *Popanz,* 112 Wis. 2d at 173); *see also State v. Courtney,* 74 Wis. 2d 705, 711, 247 N.W.2d 714 (1976).

¶ 18. The statute identifies five elements, each of which must be satisfied before a person may be civilly committed. It precisely, though perhaps clumsily, identifies those to whom it applies. That the statute attempted to do all of this in one paragraph, rather than through separate, discrete subparts, does not make it constitutionally infirm. We measure the statute for its constitutionality, not its technique of draftsmanship.

█

¶ 19. First, a person who is the subject of a commitment petition must be mentally ill. *See* Wis. Stat. § 51.20(1)(a)1.[5] and § 51.20(1)(a)2.e.[6] Whether a person is mentally ill is a medical judgment, *see Humphrey v. Cady,* 405 U.S. 504, 509 (1972), made by applying the definition of mental illness in Wis. Stat. § 51.01(13)(b), which is applicable to all involuntary commitments under Wis. Stat. § 51.20. A determination of mental illness requires a finding of "a substantial disorder of thought, mood, perception, orientation,

___

[5] "The individual is mentally ill . . . drug dependent or developmentally disabled and is a proper subject for treatment." Wis. Stat. § 51.20(1)(a)1.

[6] The fifth standard removes those "alleged to be drug dependent or developmentally disabled" from its scope. Wis. Stat. § 51.20(1)(a)2.e.

375

or memory which grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life." Wis. Stat. § 51.01(13)(b).

¶ 20. Dennis H. argues that the fifth standard's definition of dangerousness is essentially no more than a reiteration of the definition of mental illness, although in slightly different terms, and therefore allows involuntary commitment upon a finding of mental illness alone. This is not true. The fifth standard's definition of dangerousness requires proof of a substantial probability of something more than impairment; section 51.20(1)(a)2.e. requires proof of a substantial probability of a "loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions." In this regard, the fifth standard spells out a heightened standard of impairment—beyond the threshold definition of mental illness—for purposes of the dangerousness determination. Accordingly, a finding of mental illness alone does not equate to a finding of dangerousness under the fifth standard.

¶ 21. Second, the person who is the subject of the commitment petition must be incompetent to make medication or treatment decisions, or, more specifically, must be unable, "because of mental illness," to make "an informed choice as to whether to accept or refuse medication or treatment." Wis. Stat. § 51.20(1)(a)2.e. This must be evidenced either by an "incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives," or by a "substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness." *Id.* This must occur "after the advantages and disad-

vantages of and alternatives to accepting a particular medication or treatment have been explained to him or her." *Id.*

¶ 22. Third, the person must show a "substantial probability" that he or she "needs care or treatment to prevent further disability or deterioration." *Id.* This must be "demonstrated by both the individual's treatment history and his or her recent acts or omissions." *Id.*

¶ 23. Fourth, the person must evidence a "substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety." *Id.*

¶ 24. Fifth, the person must evidence "a substantial probability that he or she will, if left untreated, . . . suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions." *Id.*

¶ 25. Only after each of these elements is proven may the person be considered "dangerous" under the fifth standard. The statute also contains an explicit limitation on its reach: "if reasonable provision for the individual's care or treatment is available in the community and there is a reasonable probability that the individual will avail himself or herself of these services," then a substantial probability of suffering severe mental, emotional, or physical harm does not exist. *Id.* However, the simple provision of food and shelter by a non-treatment facility does not satisfy the requirement of "reasonable provision for the individual's care or treatment." *Id.* The statute also specifies that an "individual's status as a minor does not automatically

377

establish a substantial probability of suffering severe mental, emotional, or physical harm. . . ." *Id.*

¶ 26. It is important to note that the fifth standard requires that these conditions be evident to a "substantial probability." *Id.* The "substantial probability" degree of proof provides a proper standard of adjudication. *See Curiel,* 227 Wis. 2d at 414–15. The statute "is not so obscure that men of common intelligence must necessarily guess at its meaning and differ as to its applicability." *Curiel,* 227 Wis. 2d at 415 (citing *Peissig v. Wisconsin Gas Co.,* 155 Wis. 2d 686, 699, 456 N.W.2d 348 (1990)). Accordingly, we reject Dennis H.'s contention that the fifth standard is unconstitutionally vague.

## *Overbreadth*

¶ 27. Invalidation of a statute on overbreadth grounds is "strong medicine" that is "employed by the Court sparingly and only as a last resort." *Janssen,* 219 Wis. 2d at 373 (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 613 (1973)). "A statute is overbroad when its language, given its normal meaning, is so sweeping that its sanctions may be applied to constitutionally protected conduct which the state is not permitted to regulate." *Id.* (quoting *Bachowski v. Salamone,* 139 Wis. 2d 397, 411, 407 N.W.2d 533 (1987)). "A statute must be narrowly enough drawn that its terms can be given a reasonably precise content and those persons it encompasses can be identified with reasonable accuracy." *Post,* 197 Wis. 2d at 303 (citing *O'Connor v. Donaldson,* 422 U.S. 563, 575 (1975)).

378

¶ 28. When the legislature "undertakes to act in areas fraught with medical and scientific uncertainties," however, "legislative options must be especially broad." *Post,* 197 Wis. 2d at 304 (quoting *Jones,* 463 U.S. at 370, and *Marshall v. United States,* 414 U.S. 417, 427 (1974)). A mental commitment provision is overly broad only if by its terms it could reasonably be applied to commit mentally ill persons who are not in any way dangerous to themselves or others. *See id.* The fifth standard's focus is on dangerousness to self— dangerousness of a particularly insidious nature because it is chronic and cyclical (measured by treatment history and recent acts or omissions), and brought on by mental illness that produces an incapacity to make medication or treatment decisions as well as a substantial probability of an incapacity to care for oneself. The fifth standard does not apply to mentally ill people who are not dangerous to themselves. Accordingly, the statute is not unconstitutionally overbroad.

### Equal Protection

¶ 29. Dennis H. also argues that the fifth standard violates equal protection by allowing for commitment and involuntary medication under circumstances different than those existing under any of the other four standards. *See* Wis. Stat. § 51.20(1)(a)2.a.-e. and (13)(dm). The focus of his argument is on the fifth standard's use of the phrase "mental, emotional, or physical harm," *see* Wis. Stat. § 51.20(1)(a)2.e., in contrast to the requirement in each of the first four standards of some form of "physical" harm. *See* Wis.

379

Stat. § 51.20(1)(a)2.a.-d.[7] Specifically, Dennis H. contends that the statute impermissibly dispenses with a requirement of physical harm, allowing involuntary commitment and forcible medication upon a finding of mere mental or emotional harm.

¶ 30. Dennis H. reads the statute too narrowly. The fifth standard requires proof of a substantial probability that "if left untreated," the individual will "lack services necessary for his or her *health or safety* and suffer *severe* mental, emotional or physical harm *that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or*

---

[7] The first four standards define dangerousness as follows:

Evidences a substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm. Wis. Stat. § 51.20(1)(a)2.a.

Evidences a substantial probability of physical harm to other individuals as manifested by evidence of recent homicidal or other violent behavior, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm . . . ." Wis. Stat. § 51.20(1)(a)2.b.

Evidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself. Wis. Stat. § 51.20(1)(a)2.c.

Evidences behavior manifested by recent acts or omissions that, due to mental illness, he or she is unable to satisfy basic needs for nourishment, medical care, shelter or safety without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation or serious physical disease will imminently ensue unless the individual receives prompt and adequate treatment for this mental illness. Wis. Stat. § 51.20(1)(a)2.d.

*actions."* Wis. Stat. § 51.20(1)(a)2.e. (emphasis added). The legislature has thus defined dangerousness in the fifth standard by reference to a threat to the individual's fundamental health or safety *and* a loss of the ability to function independently or control thoughts or actions. Mere emotional or mental harm is insufficient for commitment.

¶ 31. In any event, to the extent that the differences between the fifth standard and the first four result in a classification for purposes of equal protection analysis, it is not a constitutionally impermissible one. Whether a legislative distinction between otherwise similarly situated persons violates equal protection depends upon whether there is a reasonable basis to support it. *State ex rel. Jones v. Gerhardstein,* 141 Wis. 2d 710, 733, 416 N.W.2d 883 (1987); *see also Post,* 197 Wis. 2d at 319–20 (noting that the Supreme Court has not explicitly required strict or intermediate scrutiny of involuntary commitment statutes challenged on equal protection grounds). "Where the classification does not involve a suspect class, equal protection is denied only if the legislature has made an irrational or arbitrary classification." *Jones,* 141 Wis. 2d at 733.

¶ 32. "[T]he state retains broad discretion to create classifications so long as the classifications have a reasonable basis." *McManus,* 152 Wis. 2d at 131 (citing *Graham v. Richardson,* 403 U.S. 365, 371 (1971)). Under the rational basis test, a statutory classification is presumed to be proper. *State v. Hart,* 89 Wis. 2d 58, 65, 277 N.W.2d 843 (1979). It will be sustained if the reviewing court can identify any reasonable basis to support it. *Matter of Care and Maintenance of K.C.,* 142 Wis. 2d 906, 916, 420 N.W.2d 37 (1988). Any doubt must

be resolved in favor of the reasonableness of the classi-fication and the constitutionality of the statute in which it is made. *Racine Steel Castings v. Hardy,* 144 Wis. 2d 553, 560, 426 N.W.2d 33 (1988). A "legislative enactment must be sustained unless it is 'patently arbitrary' and bears no rational relationship to a legitimate govern-ment interest." *McManus,* 152 Wis. 2d at 131 (citing *Frontiero v. Richardson,* 411 U.S. 677, 683 (1973)).[8]

¶ 33. The fifth standard applies to mentally ill persons whose mental illness renders them incapable of making informed medication decisions and makes it substantially probable that, without treatment, disabil-ity or deterioration will result, bringing on a loss of ability to provide self-care or control thoughts or ac-tions. It allows the state to intervene with care and treatment before the deterioration reaches an acute stage, thereby preventing the otherwise substantially probable and harmful loss of ability to function inde-pendently or loss of cognitive or volitional control. There is a rational basis for distinguishing between a mentally ill person who retains the capacity to make an informed decision about medication or treatment and one who lacks such capacity. The latter is helpless, by

---

[8] *Accord Milner v. Apfel,* 148 F.3d 812, 815–16 (7th Cir. 1998). The Seventh Circuit noted that "the uniform view of the courts of appeals" is that "rational basis is the proper standard for deciding equal protection cases" involving the mentally ill. The court also noted that several Supreme Court cases imply or suggest the same. *See id.* (citing *Heller v. Doe by Doe,* 509 U.S. 312, 321 (1993) ("We have applied rational-basis review in previous cases involving the mentally retarded and the mentally ill."); *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 466 (1985); *Jones v. United States,* 463 U.S. 354, 363 (1983); *Jackson v. Indiana,* 406 U.S. 715, 736–37 (1972); *Baxstrom v. Herold,* 383 U.S. 107, 111–15 (1966)).

virtue of an inability to choose medication or treatment, to avoid the harm associated with the deteriorating condition.

¶ 34. Mentally ill persons who meet the fifth standard's definition are clearly dangerous to them-selves because their incapacity to make informed medication or treatment decisions makes them more vulnerable to severely harmful deterioration than those who are competent to make such decisions. The state has a strong interest in providing care and treatment before that incapacity results in a loss of ability to function. We conclude that any distinctions between the fifth standard and the first four are rationally-based. The fifth standard does not violate equal protection.

### Substantive Due Process

¶ 35. Finally, Dennis H. argues that the fifth standard violates substantive due process by allowing involuntary commitment without evidence of a risk of imminent physical dangerousness to self or others.

¶ 36. "The state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable to care for themselves." *Addington v. Texas*, 441 U.S. 418, 426 (1979). The state also has "authority under its police power to protect the community" from any dangerous mentally ill persons. *Heller*, 509 U.S. at 332 (citing *Addington*, 441 U.S. at 426). The state's legitimate interest ceases to exist, however, if those sought to be confined "are not mentally ill or if

they do not pose *some* danger to themselves or others."[9] *Addington,* 441 U.S. at 426 (emphasis added).

¶ 37. "[E]ven if there is no foreseeable risk of self-injury or suicide, a person is literally 'dangerous to himself' if for physical *or other reasons* he is helpless to avoid the hazards of freedom either through his own efforts or with the aid of willing family members or friends." *O'Connor v. Donaldson,* 422 U.S. 563, 574, n.9 (1975) (emphasis added). Substantive due process has not been held to require proof of imminent physical dangerousness to self or others as a necessary prerequisite to involuntary commitment.[10]

¶ 38. It is well-established that the state "cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends." *Id.* at 576; *see also Foucha*

---

[9] *Addington* also held that due process requires that the middle "clear and convincing" burden of proof apply to involuntary commitment proceedings. *Addington v. Texas,* 441 U.S. 418, 433 (1979); *see also Foucha v. Louisiana,* 504 U.S. 71, 75–76 (1992).

[10] *O'Connor* held that "[a] finding of 'mental illness' alone cannot justify a State's locking a person up against his will and keeping him indefinitely in *simple* custodial confinement." *O'Connor v. Donaldson,* 422 U.S. 563, 575 (1975) (emphasis added). As we have noted, the fifth standard does not allow involuntary civil commitment upon a finding of mental illness alone. Nor does it place the mentally ill person in simple custodial confinement. *See, e.g.,* Wis. Stat. § 51.20(10)(cm) (requiring the formulation of a treatment plan prior to commitment); Wis. Stat. § 51.20(13)(g)2d.a. (limiting the time a person committed under the fifth standard can spend in inpatient treatment to 30 days).

384

*v. Louisiana,* 504 U.S. 71, 78 (1992) (involuntary mental health commitment is improper absent a determination of current mental illness and dangerousness). This does not mean, however, that substantive due process requires the state to restrict the scope of its mental health commitment statutes to only those individuals who are imminently physically dangerous. There is no "single definition that must be used as the mental condition sufficient for involuntary mental commitments." *Post,* 197 Wis. 2d at 304. In this complicated and difficult area, the Supreme Court "has wisely left the job of creating statutory definitions to the legislators who draft state laws." *Id.*

¶ 39. The fifth standard permits commitment only when a mentally ill person needs care or treatment to prevent deterioration but is unable to make an informed choice to accept it. This must be "demonstrated by both the individual's treatment history" and by the person's "recent acts or omissions." Wis. Stat. § 51.20(1)(a)2.e. It must also be *substantially probable* that if left untreated, the person "will suffer severe mental, emotional or physical harm" resulting in the loss of the "ability to function independently in the community" or in the loss of "cognitive or volitional control." *Id.* Only then may the individual be found "dangerous" under the fifth standard.

¶ 40. The fifth standard thus fits easily within the *O'Connor* formulation: even absent a requirement of obvious physical harm such as self-injury or suicide, a person may still be "dangerous to himself" if "he is helpless to avoid the hazards of freedom either through his own efforts or with the aid of willing family members or friends." *O'Connor,* 422 U.S. at 574, n.9.

¶ 41. Moreover, by requiring dangerousness to be evidenced by a person's treatment history along with

his or her recent acts or omissions, the fifth standard focuses on those who have been in treatment before and yet remain at risk of severe harm, *i.e.,* those who are chronically mentally ill and drop out of therapy or discontinue medication, giving rise to a substantial probability of a deterioration in condition to the point of inability to function independently or control thoughts or actions. *See* Darold A. Treffert, *The MacArthur Coercion Studies: A Wisconsin Perspective,* 82 Marq. L. Rev. 759, 780 (1999). The statute represents the fruition of the efforts of the Wisconsin State Medical Society and the Alliance for the Mentally Ill, professional organizations which recognized a need for a law that could be applied to those victims of mental illness who fell through the cracks under the old statutory scheme. *See id.*

¶ 42. "As with all enactments, we presume good faith on the part of the legislature." *Post,* 197 Wis. 2d at 308 (citing *State ex rel. Thomson v. Zimmerman,* 264 Wis. 644, 652, 60 N.W.2d 416 (1953)). By permitting intervention before a mentally ill person's condition becomes critical, the legislature has enabled the mental health treatment community to break the cycle associated with incapacity to choose medication or treatment, restore the person to a relatively even keel, prevent serious and potentially catastrophic harm, and ultimately reduce the amount of time spent in an institutional setting.[11] This type of "prophylactic intervention" does not violate substantive due process.

---

[11] As we have noted, those committed under the fifth standard are initially limited to 30 days of inpatient treatment. *See supra,* note 10.

¶ 43. A number of amicus curiae briefs have been filed by professional and advocacy organizations, both in support of and opposition to the fifth standard, and they cite academic research on both sides of the policy choice that the statute embodies. "The fact that studies reaching opposite conclusions can be cited on both sides of this issue does not preclude the legislature from acting, nor does it compel a finding of unconstitutionality." *Post,* 197 Wis. 2d at 311.

¶ 44. The Supreme Court has cautioned against judicial second-guessing of legislative judgments in the area of mental health commitments:

> We do not agree with the suggestion that Congress' power to legislate in this area depends on the research conducted by the psychiatric community. We have recognized repeatedly the "uncertainty of diagnosis in this field and the tentativeness of professional judgment. The only certain thing that can be said about the present state of knowledge and therapy regarding mental disease is that science has not reached finality of judgment . . . . " The lesson we have drawn is not that government may not act in the face of this uncertainty, but rather that courts should pay particular deference to reasonable legislative judgments.

*Id.* (citing *Jones,* 463 U.S. at 364 n.13 (citations omitted in original)). We defer, therefore, to the legislature's resolution of the conflicting positions of mental health advocates and psychiatric professionals.

¶ 45. In summary, the fifth standard does not allow involuntary commitment upon a finding of mental illness alone, and contains an ascertainable standard of commitment, and is therefore not unconstitutionally vague or overbroad. Furthermore, the fifth standard does not create a class of persons who can be involuntarily committed upon a finding of mere mental or

emotional harm, and therefore does not violate equal protection. Finally, the fifth standard does not violate substantive due process, because the constitution does not require proof of imminent physical harm prior to commitment for treatment. Accordingly, the fifth standard of dangerousness for involuntary civil commitment, Wis. Stat. § 51.20(1)(a)2.e., is constitutional.

*By the Court.*—The order of the Milwaukee County Circuit Court is affirmed.

¶ 46. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring).* Both mental illness and dangerousness are necessary to satisfy the requirements of substantive due process for involuntary civil commitment in Wisconsin.

¶ 47. The so-called fifth standard was enacted to allow for the hospitalization and treatment of individuals with a history of mental health treatment who become incapable of making rational treatment decisions and refuse treatment. For such individuals, refusing timely treatment could lead to substantial mental deterioration. For family members and friends, a loved one's refusal of timely treatment can result in an agonizing and helpless vigil as that individual's mental, emotional, and physical condition deteriorates.

¶ 48. A court must balance the desires of mental health professionals, friends, and family members who believe that care and treatment are in the best interests of a person who is mentally ill, and the constitutional liberty interests of individuals to be free from unwanted and unnecessary restraints. In recent decades, this balance has been struck by requiring proof of mental

388

illness and imminent dangerousness to self or others before permitting involuntary civil commitment.[1]

¶ 49. The fifth standard comes perilously close to upsetting this balance. It passes constitutional muster for me only so long as courts require significant evidence of the statutory elements, and treatment is in fact provided. For the reasons set forth, I write separately.

¶ 50. I am authorized to state that Justices WILLIAM A. BABLITCH and ANN WALSH BRADLEY join this opinion.

---

[1] *See O'Connor v. Donaldson,* 422 U.S. 563, 573–76 (1975) (state cannot confine nondangerous person without more); *Lessard v. Schmidt,* 379 F.Supp. 1376, 1381 (E.D. Wis. 1974), *vacated and remanded on other grounds,* 421 U.S. 957 (1975), *reinstated* 413 F.Supp. 1318 (E.D. Wis. 1976) (mandating dangerousness as a constitutional prerequisite to involuntary hospitalization).