# COURT OF APPEALS
## DECISION
## DATED AND FILED

## February 21, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1085**

STATE OF WISCONSIN

Cir. Ct. No. 2023ME24

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF J.D.J.:

WINNEBAGO COUNTY,

   PETITIONER-RESPONDENT,

 V.

J.D.J.,

   RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Winnebago County: MICHAEL S. GIBBS, Judge. *Reversed*.

¶1 GROGAN, J.[1] J.D.J. appeals from an order extending his WIS. STAT. ch. 51 (hereinafter "ch. 51") commitment and the corresponding order requiring the administration of involuntary medication. He claims: (1) the evidence failed to establish that he was dangerous; and (2) the involuntary medication order should be vacated because the County failed to present sufficient evidence to prove he was incompetent to refuse medication. This court reverses.

## I. BACKGROUND

¶2 In January 2023, Winnebago County filed a petition to extend J.D.J.'s involuntary commitment along with a report from J.D.J.'s treating doctor, Dr. George Monese, who had recommended the extension and had indicated a corresponding need for involuntary medication.

¶3 The circuit court held a hearing on the petition in February 2023. The County called only Dr. Monese to testify at the hearing and did not enter Dr. Monese's report into evidence. At the hearing, Dr. Monese testified that J.D.J. suffered from schizophrenia, that schizophrenia is a "major mental illness[,]" that schizophrenia is a substantial disorder that impacted J.D.J.'s "[t]hought and mood and perception[,]" and that J.D.J.'s schizophrenia grossly impaired his "[j]udgment and capacity to recognize reality." When asked if J.D.J. "would become a proper subject for commitment" "if treatment were withdrawn," Dr. Monese responded that he would "because it has happened before. He was on a commitment, it was withdrawn, and then he became a proper subject for

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

commitment again."[2] Dr. Monese did not, however, provide any details as to the circumstances of the prior withdrawal or the circumstances that resulted in the subsequent commitment.

¶4 When asked if he had discussed "medication, specifically psychotropic medication, with [J.D.J.,]" Dr. Monese confirmed that he had done so and that he had also discussed the advantages, disadvantages, and potential alternatives with him. Dr. Monese further confirmed that he did not believe J.D.J. was "capable of expressing an understanding of the advantages and disadvantages" of medication and that based on his conversations with J.D.J., he did not believe J.D.J. was competent to refuse medication because J.D.J. did not believe the medications were working despite evidence to the contrary.

¶5 In response to the County's question as to whether J.D.J. had "demonstrated a substantial likelihood that he needs care or treatment to prevent further disability or deterioration[,]" Dr. Monese responded "[y]es, I would say that to some degree[,]" and in providing an example from J.D.J.'s treatment history that led him to that conclusion, Dr. Monese simply explained that J.D.J. had gained weight—a side effect of the medication he was taking—and that although something needed "to be changed or" other "measures [needed to be taken] to remediate those side effects," J.D.J. "doesn't believe that that is the right

---

[2] J.D.J.'s counsel objected on hearsay grounds, which the circuit court overruled.

way to do so."[3]  The County followed up by asking whether there had "been any recent acts or omissions that would support [his] conclusion" on this point, and Dr. Monese explained that J.D.J. "had refused to take those specific medications that can help with the problems that he has had -- that he's having" and that J.D.J. did not "want to take" "[t]he metformin that was prescribed for his symptoms[.]"

¶6  Dr. Monese then went on to discuss J.D.J.'s "underlying physical conditions"[4] and stated that "[t]he single physical condition that he has is called metabolic syndrome[,]" that J.D.J. "was prescribed those medications specifically for metabolic syndrome and he's not taking them[,]" and that if J.D.J. did not take the medication, "[h]e would continue to have side effects like severe weight gain, cardiac, elevated BP's, including the possibility of becoming diabetic."  During cross-examination, Dr. Monese clarified that metformin had been prescribed to treat the psychotropic drug's side effects and that metformin "is the one that he refuses[.]"

¶7  When asked to opine on whether J.D.J. had "evidenced a substantial likelihood that, if left untreated, he would lack the services necessary for his health or safety[,]" Dr. Monese agreed that he would because J.D.J. is "not interested in getting any specific treatment for the metabolic syndrome."  As to the question of whether J.D.J. had "evidenced a substantial likelihood that, if left untreated, he

---

[3]  In reading Dr. Monese's testimony as a whole, it is not entirely clear what he meant when he stated that J.D.J. "doesn't believe that that is the right way to do so."  The right way to treat his mental health condition?  The right way to treat his metabolic syndrome?  Other side effects from the psychotropic drug(s)?  And what does "the right way" refer to?  Medication?  Some other type of treatment?  For this court to be able to review the Record, the questions asked of witnesses must be clear with follow-up questions asked if needed to clarify ambiguous testimony.

[4]  The circuit court again overruled J.D.J.'s objection as to this line of questioning.

would suffer severe mental, emotional, or physical harm resulting in the loss of his ability to function independently within the community[,]" Dr. Monese responded "yes, within the community of the prison system." Dr. Monese also agreed "[t]o some degree" that if left untreated, "it" would "be likely to impact [J.D.J.'s] cognitive control over [his] thoughts and actions[.]"[5] It is unclear from the Record whether these references to J.D.J.'s condition being left untreated were in regard to J.D.J.'s schizophrenia, the underlying metabolic syndrome, the other side effects Dr. Monese testified J.D.J. suffered from, or a combination of all of the above.

¶8      In response to the County's request that Dr. Monese provide "an example of severe physical harm that's likely to result if left untreated[,]"[6] Dr. Monese responded:  "If left untreated and if he had metabolic syndrome left untreated in the past, he can have atherosclerosis, he can have a heart attack.  In fact, he does already have some significant cardiac (unintelligible) even before the treatment, and those things can be very serious too."  He further opined that J.D.J. "would not avail" himself of treatment "if reasonable provisions for treatment were made available … in the community[.]"  When asked why he believed that to be true, Dr. Monese simply responded, without further elaboration, "[b]ecause he's evidenced that."  Finally, when asked if J.D.J.'s "behavior is being driven by his mental illness" and whether J.D.J.'s "mental illness is impacting his

_____

[5] Specifically, the County's attorney asked:  "Would it be likely to impact his cognitive control over thoughts and actions?"  It is unclear what "it" refers to.

[6] Again, it is unclear which untreated condition the question referred to—the schizophrenia, the metabolic condition, the other side effects of the medication, or all of the above.

5

decision-making ability whether to treat his underlying conditions[,]" Dr. Monese simply responded "[c]orrect."

¶9     J.D.J. testified on his own behalf and explained that he did not want to take the medication "because the medication don't work and it's caused harmful effects on my body" and referenced his weight gain and heart problems and stated that "they put me on pre-diabetic medication as well[.]"  J.D.J. elaborated that the medications were "screwing up [his] senses," which he said impacted his ability to pray.  J.D.J. also testified that he did not believe the medication he was taking to treat his schizophrenia was helpful because he continued to hear voices.

¶10     At the conclusion of the hearing, the circuit court stated that this was "an E[7] standard type of case" and, after making a few brief and vague findings—which will be discussed and addressed more fully below—entered an order extending J.D.J.'s commitment for twelve months and a concomitant involuntary medication order for the same time period.[8]  J.D.J. appeals.

## II.  STANDARD OF REVIEW

¶11     In a ch. 51 recommitment hearing, the County has the burden to establish by clear and convincing evidence the necessary elements required for commitment, i.e., that the individual is mentally ill, is a proper subject for

---

[7] *See* WIS. STAT. § 51.20(1)(a)2.e.

[8] Although the doctor's testimony regarding specific medications focused almost exclusively on metformin and other alluded-to medications prescribed to treat J.D.J.'s metabolic syndrome and other side effects stemming from the psychotropic medication, along with J.D.J.'s refusal to take the metformin, administration of involuntary medication in this case pertains *only* to the psychotropic medication(s)—the medication(s) needed to treat the *mental* illness that left untreated leads to dangerousness.

treatment, and is dangerous. ***Langlade County v. D.J.W.***, 2020 WI 41, ¶29, 391 Wis. 2d 231, 942 N.W.2d 277; WIS. STAT. § 51.20(1)(a)1-2, (13)(e), 13(g)3. If the circuit court determines that the County carried its burden, the circuit court must "make specific factual findings with reference to the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. on which the recommitment is based." ***D.J.W.***, 391 Wis. 2d 231, ¶3.

¶12    This court's review of a recommitment order "presents a mixed question of law and fact." ***Waukesha County v. J.W.J.***, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783. Appellate courts will "uphold a circuit court's findings of fact unless they are clearly erroneous[,]" ***id.***, and will "'accept reasonable inferences from the facts[.]'" ***Winnebago County v. Christopher S.***, 2016 WI 1, ¶50, 366 Wis. 2d 1, 878 N.W.2d 109 (citation omitted). Whether facts satisfy the statutory standards, however, is a question of law this court reviews de novo. ***Marathon County v. D.K.***, 2020 WI 8, ¶18, 390 Wis. 2d 50, 937 N.W.2d 901.

### III. DISCUSSION

¶13    J.D.J. raises two arguments on appeal. First, he contends there is insufficient evidence in the Record to support the circuit court's determination that he is currently dangerous and points to the County's failure to introduce Dr. Monese's report into evidence. Accordingly, he asserts, the only evidence as to dangerousness is the hearing testimony itself, which he says is insufficient. Second, J.D.J. contends the evidence is also insufficient to show he is incompetent to refuse medication.

¶14    The circuit court made its dangerousness determination under the "E standard," referring to WIS. STAT. § 51.20(1)(a)2.e, which is often also

identified as the fifth dangerousness standard.[9] Accordingly, this court must first determine whether there is sufficient evidence to support that conclusion. Subparagraph (1)(a)2.e provides that an individual is dangerous if he:

> evidences either incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, or substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment; and evidences a substantial probability, as demonstrated by both the individual's treatment history and his or her recent acts or omissions, that the individual needs care or treatment to prevent further disability or deterioration and a substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety and suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions.

¶15    This complex statutory standard requires the County to establish five elements. First, it must show that J.D.J. is not only mentally ill under WIS. STAT. § 51.01(13)(b)[10] but also that there is "proof of a substantial probability of something more than impairment[.]" *See* *State v. Dennis H.*, 2002 WI 104, ¶20, 255 Wis. 2d 359, 647 N.W.2d 851. Specifically, WIS. STAT. § 51.20(1)(a)2.e "requires proof of a substantial probability of a 'loss of the individual's ability to function independently in the community or the loss of cognitive or volitional

---

[9]  This opinion will use these phrases interchangeably.

[10]  WISCONSIN STAT. § 51.01(13)(b) states that "'[m]ental illness,' for purposes of involuntary commitment, means a substantial disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life, but does not include alcoholism."

control over his or her thoughts or actions.'" ***Dennis H.***, 255 Wis. 2d 359, ¶20 (quoting § 51.20(1)(a)2.e.).

¶16    The second element under the "E standard" requires the County to prove that J.D.J. is incompetent to make medication or treatment decisions or, more specifically, that he is unable, "because of mental illness," "to make an informed choice as to whether to accept or refuse medication or treatment[.]" *See* WIS. STAT. § 51.20(1)(a)2.e; ***Dennis H.***, 255 Wis. 2d 359, ¶2. "This must be evidenced either by an 'incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives,' or by a 'substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness.'" *See* ***Dennis H.***, 255 Wis. 2d 359, ¶21 (quoting § 51.20(1)(a)2.e). "This must occur 'after the advantages and disadvantages of and alternatives to accepting a particular medication or treatment have been explained to him or her.'" ***Dennis H.***, 255 Wis. 2d 359, ¶21 (quoting § 51.20(1)(a)2.e).

¶17    The third element in the "E standard" requires proof that there is a "substantial probability" that J.D.J. "needs care or treatment to prevent further disability or deterioration." *See* ***Dennis H.***, 255 Wis. 2d 359, ¶22 (quoting WIS. STAT. § 51.20(1)(a)2.e). This must be "demonstrated by both the individual's treatment history and his or her recent acts or omissions." ***Dennis H.***, 255 Wis. 2d 359, ¶22 (quoting § 51.20(1)(a)2.e). The fourth element of the "E standard" requires proof that there is "a 'substantial probability that [J.D.J.] will, if left untreated, lack services necessary for his … health or safety.'" *See* ***Dennis H.***, 255 Wis. 2d 359, ¶23 (quoting § 51.20(1)(a)2.e). Finally, the fifth element requires a showing that there is "a substantial probability that" J.D.J., "if left untreated," will "'suffer severe mental, emotional, or physical harm that will result

in the loss of [his] ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions.'" *See Dennis H.*, 255 Wis. 2d 359, ¶24 (quoting § 51.20(1)(a)2.e).

¶18    On appeal, J.D.J. asserts the evidence is insufficient to support the circuit court's determination that he is dangerous pursuant to WIS. STAT. § 51.20(1)(am) and (1)(a)2.e.[11]  Having reviewed the transcript, this court agrees that the County failed to establish § 51.20(1)(a)2.e's fifth element, as set forth above, by clear and convincing evidence.[12]

¶19    During the course of Dr. Monese's testimony, the County's attorney questioned him as to whether J.D.J. has "any underlying physical conditions[.]" Dr. Monese confirmed that J.D.J. did, in fact, have a "single physical condition … called metabolic syndrome[,]" that J.D.J. had been prescribed medication to treat metabolic syndrome but refused to take the medication, and that failure to take the medication would lead J.D.J. to "continue to have side effects like severe weight gain, cardiac, elevated BP's, including the possibility of becoming diabetic."  The following exchange ensued immediately following the exchange regarding J.D.J.'s metabolic syndrome:

> Q. Doctor, has [J.D.J.] evidenced a substantial likelihood that, if left untreated, he would lack the services necessary for his health or safety?
>
> A.  Correct.

---

[11]  Although the extension order includes WIS. STAT. § 51.20(1)(am)'s language—but not a direct citation—this opinion only addresses the elements of § 51.20(1)(a)2.e because the circuit court's decision referenced only the "E standard[.]"

[12]  Dr. Monese's report is part of the appellate Record because it was filed in the circuit court; however, the report was not introduced into evidence during the hearing, and this court therefore does not consider it.

Q. Why do you believe that?

A. Because, for example, he's not interested in getting any specific treatment for the metabolic syndrome.

Q. And, Doctor, has he evidenced a substantial likelihood that, if left untreated, he would suffer severe mental, emotional, or physical harm resulting in the loss of his ability to function independently within the community?

A. Within the community of prison, yes, within the community of the prison system.

Q. And why do you believe that?

A. Because some of those conditions are serious, the one that we're talking about.

Q. Was it[13] likely to impact his cognitive control over thoughts and actions?

A. Say that again.

Q. Would it be likely to impact his cognitive control over thoughts and actions?

A. To some degree, yes.

Q. Can you give an example, Doctor, based upon your expertise and your review of records, an example of severe physical harm that's likely to result if left untreated?

A. If left untreated and if he had metabolic syndrome left untreated in the past, he can have atherosclerosis, he can have a heart attack. In fact, he does already have some significant cardiac (unintelligible) even before the treatment, and those things can be very serious too.

Q. Doctor, if reasonable provisions for treatment were made available for [J.D.J.] in the community, is he likely to avail himself of these services in your opinion?

---

[13] Again, it is unclear what "it" refers to. The metabolic syndrome, which was seemingly the subject of Dr. Monese's prior response? The mental health condition that is the subject of this WIS. STAT. ch. 51 recommitment hearing? Or something else entirely?

11

A. No, he would not avail. He wouldn't -- to my best medical opinion, he will not be able to avail himself to those services.

Q. And why do you feel that?

A. Because he's evidenced that.

¶20 Based on this line of questioning, it appears the County sought to elicit testimony from Dr. Monese that would satisfy WIS. STAT. § 51.20(1)(a)2.e's fifth element—that there is "a substantial probability that" J.D.J., "if left untreated," would "suffer severe mental, emotional, or physical harm that will result in the loss of [his] ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions." *See Dennis H.*, 255 Wis. 2d 359, ¶24 (quoting § 51.20(1)(a)2.e). However, the phrase "if left untreated" in § 51.20(1)(a)2.e unquestionably refers to what will occur if J.D.J.'s *mental health condition* is "left untreated," whereas the exchange set forth above suggests that Dr. Monese's testimony about the consequences of failing to treat J.D.J.'s condition may have instead referred to J.D.J.'s metabolic syndrome, rather than to his mental health condition.

¶21 For example, when asked if J.D.J. had "evidenced a substantial likelihood that, *if left untreated*, he would lack the services necessary for his health or safety[,]"—a question that *immediately* followed Dr. Monese's testimony regarding side effects that might occur if J.D.J. failed to treat the *metabolic syndrome*—Dr. Monese responded "[c]orrect" and elaborated that he believed this was the case because J.D.J. is "not interested in getting any specific treatment for the *metabolic syndrome*." (Emphases added). In turn, Dr. Monese's reference to J.D.J.'s disinclination to treat the *metabolic syndrome* was followed directly by the County's attorney asking Dr. Monese if J.D.J., "*if left untreated*, … would suffer severe mental, emotional, or physical harm resulting in the loss of his ability to

function independently in the community[.]" (Emphasis added.) In the context of this exchange, it appears that counsel's questions about leaving the condition untreated—and consequently Dr. Monese's responses—were directed at a lack of treatment for J.D.J.'s *metabolic syndrome*, rather than J.D.J.'s mental health condition with which WIS. STAT. § 51.20(1)(a)2.e is concerned.

¶22    Similarly, when the County's attorney shortly thereafter questioned Dr. Monese as to whether he could provide "an example of severe physical harm that's likely to result *if left untreated*[,]" it is unclear whether the County's attorney was referring to the metabolic syndrome being "left untreated," the mental health condition being "left untreated," or both. (Emphasis added.) Dr. Monese's response, however, suggests that he interpreted the question as asking what type of physical harm might occur if J.D.J.'s *metabolic syndrome* was left untreated: "If left untreated and if he had metabolic syndrome left untreated in the past, he can have atherosclerosis, he can have a heart attack." But again, WIS. STAT. § 51.20(1)(a)2.e is concerned with what will occur if J.D.J.s *mental health condition*—not the metabolic syndrome—is left untreated.

¶23    While this court does not question Dr. Monese's medical opinion as to the importance of treating J.D.J.'s metabolic syndrome or his testimony that failure to treat the metabolic syndrome could result in severe physical harm to J.D.J., WIS. STAT. § 51.20(1)(a)2.e is concerned with whether physical harm will occur if J.D.J.'s *mental health condition* is left untreated. Consequently, absent greater clarity as to whether counsel's questions and Dr. Monese's responses about what might result if J.D.J. were "left untreated" related to J.D.J.'s mental health condition, his metabolic syndrome, or a combination of the two, this court cannot conclude that the County established by clear and convincing evidence that there is "a substantial probability" that if J.D.J.'s mental health condition is "left

untreated," he will "lack services necessary for his … health or safety and suffer severe mental, emotional, or physical harm that will result in the loss of [his] ability to function independently in the community or the loss of cognitive or volitional control over his … thoughts or actions." *See* § 51.20(1)(a)2.e.[14] Accordingly, there is insufficient evidence to support a finding that J.D.J. is dangerous pursuant to § 51.20(1)(a)2.e.[15]

¶24    While the foregoing conclusion is sufficient to establish that reversal is required, this court also notes that the circuit court's decision failed to comply with the requirement that it "make *specific factual findings* with reference to the subdivision paragraph of § 51.20(1)(a)2. on which the recommitment is based." *See **D.J.W.***, 391 Wis. 2d 231, ¶59 (emphasis added). Although the court here referenced the "E standard"—meaning WIS. STAT. § 51.20(1)(a)2.e—the court made almost no findings at all as to that standard's elements—and it certainly did not make *specific* factual findings. The court's findings as to § 51.20(1)(a)2.e are, in their entirety, as follows:

> [J.D.J.] is currently suffering a major -- from a major mental illness, that being schizophrenia. The Court finds by clear and convincing evidence that that is a substantial

---

[14] This court also notes that J.D.J.'s apparent disinterest in treating the metabolic syndrome and his refusal to take the prescribed medication for that condition is present while he is actively receiving treatment for his mental condition. Based on the evidence presented, it is unclear how leaving his mental health condition untreated would result in any difference in that regard.

[15] Although this opinion only specifically addresses the County's failure to establish WIS. STAT. § 51.20(1)(a)2.e's fifth element, *see **State v. Dennis H.***, 2002 WI 104, ¶24, 255 Wis. 2d 359, 647 N.W.2d 851, the County also failed to establish the third and fourth elements, *see **Dennis H.***, 255 Wis. 2d 359, ¶¶22-23, by clear and convincing evidence for similar reasons. However, because the County is required to prove *all* required elements in order to establish that § 51.20(1)(a)2.e applies, it is unnecessary to address those elements further in light of this court's conclusion that it failed to establish the fifth element.

> disorder of his thought, mood, as well as his perception. It also impairs his judgment as well as his capacity to recognize reality, and he is currently a danger to himself.
>
> The Court further finds with respect to the standard that this is an E standard type of case, and that with the treatment being resolved, there is a substantial likelihood that [J.D.J.] would further decompensate.
>
> There is a history here that he has refused medication in the past. He would also likely not seek such treatment within the community if it were not ordered by this Court because he does lack insight into his mental illness.
>
> The Court is understanding with his reasoning, somewhat, in that he doesn't like the side effects that the medication causes, that it causes him some weight gain as well as a bit of difficulty in praying; however, the benefits of that medication likely outweigh the negative side effects, and his lack of insight into his condition inhibits his ability to understand that. So the Court will also be signing a medication order to ensure that he gets the proper medication and that it is taken on a regular basis.

Despite "finding" that J.D.J. "is currently a danger to himself[,]" the circuit court failed to address most of § 51.20(1)(a)2.e's requirements and did not make *specific factual findings* on each requirement regarding J.D.J.'s dangerousness. Simply "finding" that an individual is "dangerous" is insufficient to comply with our supreme court's mandate in ***D.J.W.*** Rather, the circuit court must make specific factual findings supporting its statement that the subject is dangerous, and its failure to do so here serves as an alternative basis for reversal of the orders.

¶25 Based on the foregoing, this court concludes that the County failed to establish each element of WIS. STAT. § 51.20(1)(a)2.e by clear and convincing evidence and that the circuit court likewise failed to comply with ***D.J.W.***'s mandate that it make specific factual findings as to J.D.J.'s dangerousness. The recommitment order is therefore reversed as is the order for involuntary

15

administration of medication and treatment since it can only exist if there is a valid commitment.[16]

*By the Court.*—Orders reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[16] This court does not address J.D.J.'s second contention because only dispositive issues need be addressed. *See State v. Lickes*, 2021 WI 60, ¶33 n.10, 397 Wis. 2d 586, 960 N.W.2d 855 ("Issues that are not dispositive need not be addressed." (quoted source omitted)); *Martinez v. Rullman*, 2023 WI App 30, ¶5, 408 Wis. 2d 503, 992 N.W.2d 853 (this court decides cases on the narrowest possible grounds).