FITZPATRICK, J.[1]
¶1 B.A.G. appeals orders of the Rock County Circuit Court entered pursuant to WIS. STAT. § 51.20(1)(a) 2.e. subjecting him to involuntary commitment due to mental illness and directing involuntary administration of medication. On appeal, B.A.G. argues that: (1) the evidence does not support the circuit court's finding that B.A.G. was dangerous under § 51.20(1)(a) 2.e., known as the "fifth standard"; and (2) the circuit court findings are insufficient to support the order for involuntary administration of psychotropic medication. I conclude that the circuit court properly ordered the mental health commitment and involuntary administration of medication and, accordingly, the orders are affirmed.
BACKGROUND
¶2 The following facts are gleaned from the record and the transcript of the hearing of January 24, 2018.
¶3 On January 12, 2018, B.A.G. was detained in Walworth County after law enforcement observed him walking with his pants around his ankles and appearing disoriented. It was approximately seventeen degrees outside that day, and B.A.G. was wearing only a long sleeve shirt and pants. B.A.G. was hesitant to give the responding officers his name or go inside the police station. After several minutes, officers convinced B.A.G. to come inside, and B.A.G. was given food, water, and warmer clothes, but refused to communicate with the officers. All these facts raised concern for B.A.G.'s welfare, and law enforcement started an emergency detention following a meeting with the Human Services Department.
¶4 A hearing was held on January 17, 2018 in Walworth County. The circuit court found probable cause that B.A.G. is mentally ill, a proper subject for treatment, and a danger to himself or others. A final hearing was scheduled for January 24, 2018 in Rock County.
¶5 The circuit court appointed psychologist Dr. James Black, and psychiatrist Dr. Leslie Taylor, to complete examinations of B.A.G. for purposes of the final hearing. Both doctors examined B.A.G., submitted written reports of their findings to the court, and testified at the final hearing.
¶6 At that hearing, Dr. Black opined that B.A.G. meets the definition of mental illness found in WIS. STAT. ch. 51 because B.A.G. suffers from schizophrenia. Dr. Black explained that the mental illness has caused B.A.G. to have disordered thought, mood, and perception. That, in turn, impairs B.A.G.'s judgment, behavior, capacity to recognize reality, and his ability to meet the demands of his own life according to Dr. Black. Dr. Black also stated that B.A.G. believed he suffered from anxiety only, and B.A.G. believed that he does not have any psychiatric symptoms.
¶7 Dr. Black opined that B.A.G. was a proper subject for treatment and, at the time he saw B.A.G., required care in a locked psychiatric facility. Dr. Black expressed concern about B.A.G.'s behavior in the community and about discharging him too quickly because of his "lack of insight and resistance to treatment." When discussing whether B.A.G. presents a substantial probability of physical harm to himself or others, Dr. Black explained that B.A.G.'s judgment is impaired, which makes him unpredictable. Dr. Black further noted B.A.G.'s history, which included making threats to other residents at a homeless shelter and a physical assault on another individual. Dr. Black also expressed concern for B.A.G.'s safety and welfare if he is not under a commitment order.
¶8 Dr. Taylor testified that B.A.G. suffers from schizophrenia and that B.A.G. is a proper subject for treatment in a locked unit. She explained that, when she met with B.A.G., it was very difficult for her to interview him because he was attending to internal stimuli and talking under his breath.[2] Dr. Taylor noted that, at the time she was examining B.A.G., he would often be in the middle of answering a question and then became confused about where he was in the conversation.
¶9 Dr. Taylor indicated that B.A.G. presents a substantial probability of physical harm to himself and others. She also explained that B.A.G.'s disorganization and confusion would likely leave him unable to care for himself. Dr. Taylor pointed to B.A.G.'s cycle of hospitalization, discharge, and an inability to follow through with appointments and medication, which ultimately led to the incident that prompted B.A.G.'s detention in Walworth County. Dr. Taylor also opined that B.A.G.'s mental illness plays a large role in his homelessness.
¶10 Additionally, Dr. Taylor testified that she explained the advantages, disadvantages, and alternatives of psychotropic medication to B.A.G. Specifically, as to advantages, the medication will improve his psychosis and stabilize his mood. As to disadvantages, Dr. Taylor told B.A.G. that the medications could cause him to be sedated, cause weight gain, and would give him dry mouth. Additionally, she noted that lamotrigine can cause a rash if it is not titrated appropriately. Dr. Taylor also explained to B.A.G. that he could take mood stabilizers or other anti-psychotic medications as alternative treatments.
¶11 The circuit court found, as summarized here, that there was clear and convincing evidence that: (1) B.A.G. suffers from a mental illness; and (2) all the elements of the fifth standard were present. As a result, the court entered an order for a six-month commitment pursuant to WIS. STAT. § 51.20(1)(a) 2.e. and an order for the involuntary administration of medication. B.A.G. now appeals.
DISCUSSION
¶12 B.A.G. argues that there was insufficient evidence to support the WIS. STAT. Ch. 51 commitment order and the order for the involuntary administration of medicine. I reject B.A.G.'s arguments and affirm the orders of the circuit court.
I. Standard of Review.
¶13 This court upholds a circuit court's findings of fact unless those findings are clearly erroneous. Outagamie Cty. v. Melanie L. , 2013 WI 67, ¶38, 349 Wis. 2d 148, 833 N.W.2d 607. This court also accepts reasonable inferences from the facts available to the circuit court. Id. On appeal, this court must apply the facts to the statutory standards in WIS. STAT. Ch. 51. Applying the facts to the statutory standards of Chapter 51 is a question of law that this court reviews independently. Id. , ¶39; see also K.N.K. v. Buhler , 139 Wis. 2d 190, 198, 407 N.W.2d 281 (Ct. App. 1987).
II. The Fifth Standard.
¶14 The portion of WIS. STAT. Ch. 51 known as the fifth standard, WIS. STAT. § 51.20(1)(a) 2.e., "permits commitment only when a mentally ill person needs care or treatment to prevent deterioration but is unable to make an informed choice to accept it." State v. Dennis H. , 2002 WI 104, ¶39, 255 Wis. 2d 359, 647 N.W.2d 851. To involuntarily commit an individual under the fifth standard, a petitioner must prove, through clear and convincing evidence, the following:
(1) the individual is mentally ill;
(2) the individual is unable to make an informed choice as to whether to accept or refuse treatment because of mental illness;
(3) the individual shows a substantial probability that he or she needs care or treatment to prevent further disability or deterioration, based upon his or her treatment history and recent acts or omissions;
(4) the individual evidences a substantial probability that he or she will lack services necessary for health and safety if he or she is left untreated; and,
(5) the individual evidences a substantial probability that he or she will suffer mental, emotional, or physical harm if left untreated, resulting in the loss of either the individual's ability to function independently in the community or the individual's cognitive or volitional control over any thoughts or actions.
Id. , ¶¶18-26 (citing § 51.20(1)(a) 2.e.).
¶15 "Only after each of these elements is proven may the person be considered 'dangerous' under the fifth standard." Id. , ¶25. Importantly, however, " 'if reasonable provision for the individual's care or treatment is available in the community and there is a reasonable probability that the individual will avail himself or herself of these services,' then a substantial probability of suffering severe mental, emotional, or physical harm does not exist." Id. (quoting § 51.20(1)(a) 2.e.). For purposes of a Chapter 51 proceeding, "substantial probability" is defined as "much more likely than not." State v. Curiel , 227 Wis. 2d 389, 414, 597 N.W.2d 697 (1999).
¶16 I will now discuss whether there is sufficient evidence in the record to support the order that B.A.G. be involuntary committed.
A. B.A.G. is mentally ill.
¶17 B.A.G. does not dispute the circuit court's finding that he suffers from a mental illness, schizophrenia.
B. Due to his mental illness, B.A.G. was unable to make an informed decision as to whether to accept or refuse medication and treatment.
¶18 B.A.G.'s behavior, history, and inability to recognize that he has a mental illness indicate that he is unable to make an informed decision regarding his medication and treatment.
¶19 Both experts observed B.A.G.'s behavior during their examinations of him. Dr. Black's records indicate that B.A.G. was suffering "disabling symptoms of hallucinations." Dr. Taylor described B.A.G.'s inability to focus on her conversation with him because he was constantly attending to internal stimuli. These reports matched previous records from a doctor who indicated that B.A.G. manifested the same behaviors during a psychiatric interview.
¶20 B.A.G. expressed to both doctors that he did not believe he had a mental illness and that he did not want, or see a need for, ongoing medication. But, Dr. Taylor and Dr. Black agreed that B.A.G.'s mental illness impairs him to such a degree that he cannot provide for his own care, including follow-up services. Dr. Taylor related her concern back to October 2017 when B.A.G. was discharged from the hospital and did not follow through with his medication. Dr. Taylor also opined that B.A.G. could not comprehend what she explained to him regarding the advantages, disadvantages, and alternatives to psychotropic medication.
¶21 B.A.G. argues that, although Dr. Taylor testified regarding B.A.G.'s inability to understand the advantages and disadvantages of medication, there was no evidence presented regarding his ability to process information. Therefore, according to B.A.G., the County did not meet its burden of proof. However, this argument ignores the undisputed evidence accepted by the circuit court regarding B.A.G.'s underlying behavior during both doctors' examinations, as well as his history of failing to follow through with appointments and medication.
¶22 The doctors' observations of B.A.G., his history of unwillingness to take medication, and B.A.G.'s denial of his mental illness all support the circuit court's conclusion that there was clear and convincing evidence that B.A.G. was not able to make an informed decision regarding whether to accept or refuse medication and treatment.
C. There was a substantial probability that B.A.G. needed care or treatment to prevent further disability or deterioration.
¶23 B.A.G.'s treatment history and recent acts and omissions demonstrate that he needs care and treatment to prevent further disability or treatment.
¶24 B.A.G. contends that being outside in cold weather is the only recent act or omission that contributed to the court's decision. However, B.A.G.'s argument ignores the undisputed and overwhelming evidence the circuit court was required to consider regarding B.A.G.'s treatment history, and his recent acts or omissions, when determining whether there was a continuing need for treatment. See Dennis H. , 255 Wis. 2d 359, ¶22.
¶25 Here, the circuit court found the following. B.A.G. has a history of mental health issues, a previous involuntary commitment, and a history of violence with residents of shelters where he stayed. The court also pointed to B.A.G.'s history of failing to follow through with treatment and medication. As well, the court correctly and specifically addressed the event in October 2017 when B.A.G. was diagnosed and given medication, but failed to take the medication and ultimately "deteriorated" to the point of requiring an emergency detention.
¶26 Moreover, B.A.G.'s detention was not merely because he was outside in inadequate clothing. Law enforcement also saw that B.A.G. was unable to communicate and appeared disoriented, paranoid, and disorganized. Officers were also concerned about B.A.G.'s ability to maintain his basic self-care.
¶27 While B.A.G.'s notable clothing choice in such cold weather may have contributed to the circuit court's conclusion, it certainly is not the only supporting evidence. I agree with the circuit court's conclusion that there was clear and convincing evidence that B.A.G. needs care or treatment to prevent further disability or deterioration.
D. There was a substantial probability that B.A.G., if left untreated, would lack services necessary for his health or safety.
¶28 The circuit court concluded that, if B.A.G. is left untreated, he will not be able to take care of his health or safety. As an example to support that conclusion, the court noted that B.A.G. was not acting on his "free volition" in wearing minimal clothing in cold weather. Rather, the court concluded that B.A.G.'s mental illness was driving that choice. The circuit court's conclusions are supported by clear and convincing evidence, including the experts' opinions.
¶29 Dr. Taylor testified that B.A.G.'s disorganization and confusion makes him unable to take care of the ordinary demands of life. She believed that, if he was not hospitalized, B.A.G. would not be able to determine how to get home or obtain food. Dr. Black testified that B.A.G.'s behavior was unstable, B.A.G. lacked insight, and he resisted treatment.
¶30 B.A.G. asserts that Dr. Taylor's opinion is "strictly speculation," and B.A.G. knows how to use community resources, such as homeless shelters, to his advantage. However, that argument falls flat. "[T]he simple provision of food and shelter by a non-treatment facility does not satisfy the requirement of the 'reasonable provision for the individual's care or treatment.' " Dennis H. , 255 Wis. 2d 359, ¶25 (quoting WIS. STAT. § 51.20(1)(a) 2.e.). In contrast to B.A.G.'s unsupported argument, Dr. Taylor based her opinion on B.A.G.'s recent history, in which he was hospitalized, discharged, and then failed to follow through with his appointments and medication, and deteriorated to the point at which he was detained again. B.A.G. does not address his relevant history in his appeal to this court. Rather, B.A.G. merely makes unsubstantiated statements that do not overcome the undisputed opinions of the experts the circuit court found credible.
¶31 The evidence in the record clearly and convincingly demonstrates that B.A.G. would lack the services necessary for his health and safety if left untreated.
E. B.A.G. evidenced a substantial probability that he will suffer mental, emotional, or physical harm if left untreated, resulting in the loss of either his ability to function independently in the community or his cognitive or volitional control over any thoughts or actions.
¶32 The record also supports the circuit court's findings and conclusions regarding the final element of the fifth standard. Both experts testified that B.A.G. may be of harm to himself or others. Dr. Black indicated that B.A.G.'s judgment is impaired, which makes him unpredictable. Dr. Taylor indicated that B.A.G. may be a harm to himself, but also to others given some violent outbreaks in the past. In late 2017, two incidents of violence were reported regarding B.A.G. In November, B.A.G. was involuntarily hospitalized after making threats to kill other residents in a group home where he was staying. Then, in December, after he was off his medication for several days, B.A.G. was arrested for punching another resident in a shelter. These events occurred within two months of the incident that led to B.A.G.'s emergency detention in January. Due to their proximity in time to his detention, those are factors in determining whether B.A.G. may be in altercations or situations in which he may be harmed. These opinions and facts, combined with B.A.G.'s deteriorating mental state, inevitably lead to the conclusion that B.A.G. will harm himself or others if left untreated, and that has resulted in his loss of volitional control over his thoughts and actions.
¶33 B.A.G. asserts that there was no evidence that he was in imminent danger of severe physical harm by his conduct, he did not suffer any "adverse effects from the cold," and the County presented no evidence as to how long he had been outside. Related to those assertions, B.A.G. claims that "imminent danger" is relevant when determining whether he would suffer mental, emotional, or physical harm. However, B.A.G. does not point to any case law supporting this assertion. Instead, the question the circuit court was required to answer was whether it was "much more likely than not" that B.A.G. would suffer mental, emotional, or physical harm if he was left untreated. Dennis H. , 255 Wis. 2d 359, ¶24 ; Curiel , 227 Wis. 2d at 414. Whether or not B.A.G. was in "imminent danger" misstates the applicable statutory test.
¶34 B.A.G. also argues that he was not a harm to himself or others because he knew how to use the social services system to get "the bare essentials of life" despite his mental illness. But, B.A.G. needs more than "bare essentials," such as shelter, clothes, or food. He needs medication and treatment to avoid incidents like the one that ultimately led to his detention in this case and violent outbreaks, such as those that happened in late 2017. While B.A.G. now claims that he can avail himself of social services, his history demonstrates that that he will not follow through with treatment independently or properly avail himself of those community resources.
¶35 There is clear and convincing evidence in the record which supports the circuit court's finding regarding this final element of the fifth standard.
¶36 In sum, I conclude that the order placing B.A.G. in a six-month commitment was consistent with Wisconsin law.
III. Involuntary Administration of Medication.
¶37 B.A.G. challenges the circuit court's order for the involuntary administration of psychotropic medication. However, pursuant to WIS. STAT. § 51.61(1)(g)3m., "following a final commitment order" under the fifth standard, "the court shall issue an order permitting medication or treatment to be administered to the individual regardless of his or her consent." Sec. 51.61(1)(g)3m. (emphasis added); see also Melanie L. , 349 Wis. 2d 148, ¶61. The use of the word "shall" means that the circuit court was required to issue the order permitting the involuntary administration of medication to B.A.G. following his involuntary commitment under the fifth standard.[3]
CONCLUSION
¶38 For these reasons, the orders of the circuit court are affirmed.
By the Court. -Orders affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(c) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Dr. Taylor clarified during her testimony that someone with schizophrenia typically has auditory hallucinations (in other words, hears voices) and, when those are particularly severe, it is hard for that person to distinguish the auditory hallucinations from someone speaking to them. Dr. Taylor further explained that, if the disease goes untreated, the auditory hallucinations appear to be real to the person afflicted.

In opposing the medication order, B.A.G. relies on our supreme court's analysis in Outagamie Cty. v. Melanie L. , 2013 WI 67, 349 Wis. 2d 148, 833 N.W.2d 607 relating to Wis. Stat. § 51.61(1g)4. However, the Court in Melanie L. explicitly stated that the party was not committed under the fifth standard. Id. , ¶61. This makes the case distinguishable from the present case. In his reply brief, B.A.G. sets forth no argument challenging the County's contention regarding Wis. Stat. § 51.61(1)(g)3m. Unrefuted arguments are deemed conceded. See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp. , 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979).