COURT OF APPEALS
DECISION
DATED AND FILED

November 5, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP961**

Cir. Ct. No. **2019ME21**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

IN THE MATTER OF THE CONDITION OF W.G.:

JACKSON COUNTY,

PETITIONER-RESPONDENT,

V.

W.G.,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Jackson County: ANNA L. BECKER, Judge. *Reversed.*

¶1     GRAHAM, J.[1]  W.G. appeals an involuntary recommitment order entered pursuant to WIS. STAT. § 51.20 and an involuntary medication order entered pursuant to WIS. STAT. § 51.61(1)(g)4.  He contends that both orders should be reversed because the evidence was insufficient to show that he was "dangerous" to himself or others, as that term is defined in § 51.20(1)(a)2. and (1)(am).  I conclude that Jackson County failed to meet its burden to show that W.G. was dangerous, and therefore, I reverse both orders.

## BACKGROUND

¶2     In June of 2019, W.G. was involuntarily committed for mental health treatment pursuant to WIS. STAT. § 51.20 for a period of six months.  He spent this commitment period in a group home setting.

¶3     In November of 2019, the County filed a petition to recommit W.G.  The County alleged that W.G. was mentally ill and drug dependent, a proper subject for treatment, and dangerous to himself or others.  *See* WIS. STAT. § 51.20(1)(a).  W.G. disputed that he was dangerous as that term is defined in the statute.

¶4     During the recommitment hearing, the County called Dr. Stephen Dal Cerro as its sole witness.[2]  Dr. Dal Cerro is a clinical psychologist who had examined W.G. and reviewed his medical file.  Dr. Dal Cerro testified that W.G.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] The County filed a report prepared by Dr. Dal Cerro, but it was not entered into evidence at the hearing.  Accordingly, I do not consider it.  *See Langlade Cnty. v. D.J.W.*, 2020 WI 41, ¶7 n.4, 391 Wis. 2d 231, 942 N.W.2d 277.

"suffers from schizoaffective disorder" and a "psychotic disorder" of "longstanding duration," as well as a "rather severe substance use disorder." He testified that W.G. has "benefited from medication for his schizoaffective disorder."

¶5    Dr. Dal Cerro testified that W.G. has "impaired" cognitive functioning and a "reliable pattern of relapsing into substance abuse, which exacerbates his psychotic disorder, with a tendency to go off his medications." He also testified that due to "substance use disorder and psychosis," W.G.'s "thought process becomes distorted and he's unable to act in his own best interests in regards to medication and other aspects of treatment." However, Dr. Dal Cerro did not offer any examples from W.G.'s treatment history to support these statements.

¶6    Finally, Dr. Dal Cerro testified that W.G. "needs ongoing and total supervision" and "the structure and the assistance that he receives at the group home" or else there would be a "risk of relapse." Yet Dr. Dal Cerro acknowledged that he was unaware of what services W.G. would be able to access in the community if the commitment were ended.

¶7    W.G. testified at the recommitment hearing on his own behalf. He testified that prior to his initial commitment, he had been attempting to get treatment, but the facility he went to did not have room for him. He testified that since the start of his commitment, he has not "hit anybody" and has not had suicidal thoughts. He described his mental health issues, stating that he sometimes sees a "green haze" or a "shadow" that isn't there, and hears a "train" that varies in loudness. When these things happen, he "usually go[es] to [group home] staff or to somebody that [he] can trust with it and explain[s] what's going on."

¶8      W.G. testified that if his commitment expired, he would continue to stay in the group home "until [he] felt comfortable to go on [his] own," which, he acknowledged, "might be a year or two."  He testified that his current medications eliminated his craving for opiates and that he wanted to continue taking these medications.  He also testified that he had a job at which he worked twenty hours per week.

¶9      At the close of the hearing, the circuit court recommitted W.G. for a period of twelve months and issued an involuntary medication order.  As the court explained, "The concern that I think is raised here is the likelihood of relapse."  It observed that W.G. is "making continuous improvement," but is "still seeing residual symptoms of psychosis."  The court stated that "psychosis can lead to relapse, and then it ends up in an endless cycle with a relapse triggering more of the psychosis … and it builds into a disaster … and I don't want to see [W.G.] at the steps of suicide."

## DISCUSSION

¶10     W.G. argues that the evidence was insufficient to prove that he was dangerous and that the circuit court erred by issuing the recommitment and involuntary medication orders.  Review of a circuit court's decision to commit an individual pursuant to WIS. STAT. § 51.20 presents "a mixed question of law and fact."  *Waukesha Cnty. v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783.  I will uphold the circuit court's findings of fact unless clearly erroneous, but whether those facts satisfy the statutory standard is a question of law that I review independently of the circuit court's determination.  *Id.*  The parties agree that if I determine that the involuntary commitment order was entered in error, the

involuntary medication order should be vacated as well. *See* WIS. STAT. § 51.61(1)(g).

¶11    To commit an individual for involuntary treatment under Chapter 51, the County must prove all required facts by "clear and convincing evidence." *Langlade Cnty. v. D.J.W.*, 2020 WI 41, ¶23, 391 Wis. 2d 231, 942 N.W.2d 277. Among other things, the County must prove that the individual is "dangerous" to themself or others. WIS. STAT. § 51.20(1)(a)2. Dangerousness may be shown in any of five ways listed in § 51.20(1)(a)2.

¶12    In an initial commitment proceeding, each of these five standards require the County to identify "recent" acts or omissions showing dangerousness. WIS. STAT. § 51.20(1)(a)2.; *Portage Cnty. v. J.W.K*, 2019 WI 54, ¶17, 386 Wis. 2d 672, 927 N.W.2d 509. In a recommitment proceeding, however, the County is not required to identify acts or omissions that were "recent." Instead, this requirement "may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." Section 51.20(1)(am). The standard in paragraph (1)(am) "recognizes that an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior, but if treatment were withdrawn, there may be a substantial likelihood such behavior would recur." *J.W.K.*, 386 Wis. 2d 672, ¶19.

¶13    Even though WIS. STAT. § 51.20(1)(am) allows the court to view dangerousness through a different "lens" in a recommitment hearing, *D.J.W.*, 391 Wis. 2d 231, ¶50, that paragraph nevertheless "mandates that circuit courts ground their conclusions" in one of the five dangerousness standards provided in

§ 51.20(1)(a)2., *id.*, ¶41.    In other words, the County must still prove dangerousness under one of those five standards, even though it need not identify recent acts or omissions showing dangerousness and may instead make a showing that there is a "substantial likelihood … that the individual would be a proper subject for commitment if treatment were withdrawn." *Id.*[3]

## I.  Summary of the Parties' Arguments

¶14    W.G. argues that the County failed to prove that he was dangerous. He acknowledges that the County need not show recent acts or omissions because it proceeded under WIS. STAT. § 51.20(1)(am).    However, he points out that neither the County nor the circuit court specified any of the statutory dangerousness standards as the basis for the recommitment in the proceedings below.    W.G. addresses each of the five standards in turn, and he argues that the evidence presented at the hearing did not satisfy any of these standards.

¶15    In its appellate response brief, the County again fails to specify any of the five dangerousness standards as the basis for W.G.'s recommitment, and it does not argue that the evidence demonstrates that W.G. was dangerous under any of these five standards.    It instead argues that W.G. was dangerous under WIS. STAT. § 51.20(1)(am) because there was a "substantial likelihood" that he "would

---

[3] In *D.J.W.*, our supreme court directed that in all recommitment proceedings "going forward," circuit courts must "make specific factual findings with reference to the subdivision paragraph of § 51.20(1)(a)2. on which the recommitment is based." 2020 WI 41, ¶40, 391 Wis. 2d 231, 942 N.W.2d 277.    I recognize that W.G.'s recommitment hearing occurred several months before *D.J.W.* was decided, and therefore, that the circuit court was unable to benefit from its guidance during W.G.'s recommitment proceeding.    However, both parties agree that the substantive law set forth in *D.J.W.* applies to this appeal.

be a proper subject for commitment if treatment were withdrawn."[4]  This argument is unavailing because, as demonstrated above and in ***D.J.W.***, § 51.20(1)(am) is not a standalone dangerousness standard.

¶16     The County has the burden of proof, and it cannot prevail unless it demonstrates that W.G. is dangerous under one of the five standards set forth in WIS. STAT. § 51.20(1)(a)2.  It is difficult to see how the County could meet this burden when, even on appeal, it does not identify any dangerousness standard it believes is satisfied by the evidence in this case.  Because the County does not respond to any of W.G.'s separate arguments about the five dangerousness standards, I could determine that the County has conceded its failure to prove dangerousness under any of those standards.  *See **Schlieper v. DNR***, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (respondent's failure to respond to an appellant's arguments may be taken as a concession).

¶17     Nevertheless, giving the County the benefit of the doubt, the questions it asked during the recommitment hearing suggest that it may have been proceeding under the so-called "fifth standard" of dangerousness, which is set forth in WIS. STAT. § 51.20(1)(a)2.e.[5]  Accordingly, although I deem the County's

---

[4] The County also contends that we should reject W.G.'s appeal because "[t]he recommitment order W.G. challenges will expire on December 2, 2020" and will therefore "be moot."  To be sure, an appeal of a commitment order that has expired may be moot, and appellate courts generally decline to address moot issues.  *See **Marathon Cnty. v. D.K.***, 2020 WI 8, ¶¶19-20, 390 Wis. 2d 50, 937 N.W.2d 901.  But W.G.'s commitment has not yet expired, and therefore, the issues that W.G. raises are not currently moot.

[5] Some of the County's questions at the recommitment hearing appear to track the language of the fifth dangerousness standard.  For example, the County asked the testifying psychologist whether there was "a substantial probability that if the commitment were ended that [W.G.] would need more care or treatment to prevent disability or deterioration specifically relating to health and safety."  This mirrors language of the fifth standard, which requires the County to show a "substantial probability … that the individual needs care or treatment to prevent
(continued)

7

arguments on the first four dangerousness standards conceded, I analyze whether the County met its burden under the fifth standard.

## II.  The Fifth Dangerousness Standard

¶18     The statutory language setting forth the fifth dangerousness standard is dense, and its requirements are difficult to parse.  To summarize, the fifth standard addresses individuals whose mental illness prevents them from understanding the advantages and disadvantages of treatment and who pose a danger to themselves because there is a substantial probability that their condition will deteriorate without treatment.[6]  WIS. STAT. § 51.20(1)(a)2.e.; *see also* ***D.J.W.***, 391 Wis. 2d 231, ¶62 (J. Roggensack, dissenting); ***State v. Dennis H.***, 2002 WI 104, ¶¶18-26, 255 Wis. 2d 359, 647 N.W.2d 851 (parsing the statutory language and describing the elements of the fifth standard).

¶19     Stated more fully, WIS. STAT. § 51.20(1)(a)2.e. provides that an individual is dangerous under the fifth standard if:

> For an individual, other than an individual who is
> alleged to be drug dependent or developmentally disabled,

---

further disability or deterioration and a substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety ….”  WIS. STAT. § 51.20(1)(a)2.e.

[6] The fifth dangerousness standard applies only to individuals who are mentally ill.  The County alleges that W.G. is *both* mentally ill and drug dependent, and “the fifth [dangerousness] standard may be used to involuntarily commit persons with dual diagnoses of mental illness and either drug dependency or developmental disability.” ***Dane Cnty. v. Kelly M.***, 2011 WI App 69, ¶14, 333 Wis. 2d 719, 798 N.W.2d 697.

W.G. argues that the County failed to satisfy the fifth standard because it took the position that his drug addiction, rather than his mental illness, might prevent him from seeking treatment.  I do not address this argument because the other issues set forth below are dispositive. *See* ***Barrows v. American Family Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) (“An appellate court need not address every issue raised by the parties when one issue is dispositive.”).

after the advantages and disadvantages of and alternatives to accepting a particular medication or treatment have been explained to him or her and because of mental illness, evidences either incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, or substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment; and evidences a substantial probability, *as demonstrated by both the individual's treatment history* and his or her recent acts or omissions, that the individual needs care or treatment to prevent further disability or deterioration and a substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety and suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions. *The probability of suffering severe mental, emotional, or physical harm is not substantial under this subd. 2. e. if reasonable provision for the individual's care or treatment is available in the community and there is a reasonable probability that the individual will avail himself or herself of these services ….*

(Emphasis added.) I do not attempt to fully consider all of the fifth standard's requirements because the County appears not to have met its burden of proof in at least two respects.

¶20 First, the fifth dangerousness standard requires proof that there is a "substantial probability, as demonstrated by [] the individual's treatment history … that the individual needs care or treatment to prevent further disability or deterioration …."[7] But the County did not identify any incidents in W.G.'s "treatment history" showing that he "needs care or treatment to prevent further

---

[7] As discussed above, even though WIS. STAT. § 51.20(1)(a)2.e. also requires "recent acts or omissions," the County did not need to identify recent acts or omissions in this case because it was proceeding under § 51.20(1)(am).

disability or deterioration." Indeed, very little evidence of W.G.'s treatment history was introduced at the hearing, aside from testimony that he was receiving treatment at the group home and that the treatment was going well. To be sure, Dr. Dal Cerro testified that W.G. had a "reliable pattern of relapsing into substance abuse," and that due to his "substance use disorder and psychosis," his "thought process becomes distorted and he's unable to act in his own best interests in regards to medication and other aspects of treatment." But these are conclusory statements, made without reference to any specific incidents in W.G.'s treatment history.[8]

¶21 I recognize that in commitment proceedings, the parties and the circuit court are often well aware of an individual's treatment history, and that a county may be inclined to introduce summary testimony rather than point to specifics. However, commitment proceedings implicate fundamental liberty interests, and their procedural requirements must not be taken lightly. *See D.J.W.*, 391 Wis. 2d 231, ¶¶42-43. To the extent that the County was proceeding under the fifth dangerousness standard, it was required to demonstrate W.G.'s need for care or treatment by reference to his "treatment history," and the vague generalizations introduced at the hearing do not appear to satisfy this requirement. However, I need not definitively resolve this issue, because as I now explain,

---

[8] Dr. Dal Cerro was more specific when testifying about W.G.'s cognitive abilities, noting that W.G.'s "history of drug abuse as well as a closed-head injury and possible other things have resulted in declines in his general mental ability so that his mental ability is in the borderline range …." But this testimony does not address the question the statute asks, which is whether there is a "substantial probability" that W.G. "needs care or treatment to prevent *further* disability or deterioration …." WIS. STAT. § 51.20(1)(a)2.e. (emphasis added). And even if it did, it is far from the "clear and convincing evidence" the commitment statute requires. Section 51.20(13)(e).

W.G.'s unrebutted testimony shows that he was not "dangerous" under the fifth standard.

¶22    The fifth dangerousness standard "contains an explicit limitation on its reach: 'if reasonable provision for the individual's care or treatment is available in the community and there is a reasonable probability that the individual will avail himself or herself of these services,'" the individual is not dangerous under that standard. *Dennis H.*, 255 Wis. 2d 359, ¶25 (quoting WIS. STAT. § 51.20(1)(a)2.e.). W.G. offered uncontroverted testimony that he had been seeking treatment before being committed, and that he would remain at the group home and continue to receive treatment even if his commitment expired. The circuit court made no finding that W.G. was not credible, and the County offered no evidence or argument to suggest that, despite his testimony, W.G. would not actually be willing or able to continue to receive treatment at the group home. Dr. Dal Cerro testified that W.G. would be at risk of deteriorating if he left the group home, but the State offered no evidence or argument to suggest that W.G. would be likely to leave.

¶23    The circuit court did not make any findings at all on this issue, and the uncontroverted evidence demonstrates a reasonable probability that W.G. would avail himself of the care and treatment available in the community. Accordingly, the County has not met its burden to show that W.G. was dangerous under the fifth standard.

## CONCLUSION

¶24    For all these reasons, I conclude that the County failed to meet its burden to show by clear and convincing evidence that W.G. was dangerous to

himself or others.  I therefore reverse the circuit court's recommitment order and involuntary medication order.[9]

*By the Court.*—Orders reversed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[9] Three days before W.G.'s reply brief was received for filing on Friday October 9, 2020, W.G. filed a motion to advance submission of this appeal and to summarily dispose of the appeal. Submission occurred on Monday, October 12, 2020, without the need for an order by the court. I deny the motion to advance submission as moot, and I also deny the motion for summary disposition.