COURT OF APPEALS
DECISION
DATED AND FILED

December 13, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP863**

STATE OF WISCONSIN

Cir. Ct. No. 2022ME422

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF A.P.D.:

WINNEBAGO COUNTY,

PETITIONER-RESPONDENT,

V.

A.P.D.,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Winnebago County: SCOTT C. WOLDT, Judge. *Reversed.*

¶1 LAZAR, J.[1] Andrew[2] appeals from orders for extension of his commitment under WIS. STAT. § 51.20(1)(am) and for the involuntary administration of medication and treatment under WIS. STAT. § 51.61(1)(g). Andrew asserts that Winnebago County failed to introduce sufficient evidence to establish that he suffered from a mental illness. He further asserts that, contrary to *Langlade County v. D.J.W.*, 2020 WI 41, ¶59, 391 Wis. 2d 231, 942 N.W.2d 277, the trial court failed to make specific factual findings of dangerousness under § 51.20(1)(a)2.e. And, finally, Andrew asserts that the order for involuntary administration of medication and treatment was not based upon sufficient evidence. Thus, he contends, both orders must be reversed. The County refutes each point.

¶2 This court concludes that the County did introduce sufficient evidence to prove, by clear and convincing evidence, that Andrew was mentally ill. With respect to the second issue, however, this court agrees that the trial court did not make specific factual findings that Andrew was dangerous, and of more concern, failed to find that "because of" Andrew's mental illness he was either incapable of expressing or applying an understanding the advantages and disadvantages of medication to treat his mental illness. *See* WIS. STAT. § 51.20(1)(a)2.e. Because the recommitment order is reversed, the corresponding order for involuntary medication and treatment cannot stand. Both orders are of necessity reversed.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] This court refers to the subject individual by a pseudonym to protect his confidentiality. *See* WIS. STAT. RULE 809.19(1)(g).

**BACKGROUND**

¶3      The County filed a petition for recommitment of and involuntary medication and treatment for Andrew pursuant to WIS. STAT. ch. 51.  Andrew's initial commitment began in 2021; his 2022 recommitment was affirmed by this court in ***Winnebago County v. A.P.D.***, No. 2022AP817, unpublished slip op. (WI App Nov. 16, 2022), *review denied* (WI Feb. 21, 2023) (No. 2022AP817).  The petition for 2023 giving rise to this appeal alleged that Andrew was mentally ill and a proper subject for treatment and that he was dangerous under the standard articulated in WIS. STAT. § 51.20(1)(a)2.e. ("the fifth standard").  The trial court conducted a hearing on this petition on January 10, 2023.

¶4      At the hearing, the sole witness was Dr. George Monese, a psychiatrist at the Wisconsin Resource Center[3] who had been Andrew's treating psychiatrist for almost two years.  Monese testified that Andrew had a "major mood disorder, i.e. bipolar disorder," which is a clinically recognized mental illness and which "grossly impair[s] [Andrew's] judgment, behavior, [and] capacity to recognize reality."  He further testified that Andrew would become a proper subject for commitment if treatment were withdrawn and that Andrew was "incompetent" to make treatment decisions and refuse medication because "he lacks insight on a number of domains."  Monese explained that Andrew "does not believe that he has [a] serious mental illness" or other medical conditions—

---

[3] The Wisconsin Resource Center is "a correctional institution that provides psychological evaluations, specialized learning programs, training and supervision for inmates whose behavior presents a serious problem to themselves or others in state prisons."  WIS. STAT. § 46.056.

including metabolic syndrome and extremely low levels of vitamin D—and that he "refuses treatment for all of those."

¶5 Finally, Monese testified regarding dangerousness under the fifth standard, which may be found if the subject individual:

> evidences either incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, or substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment; and evidences a substantial probability … that the individual needs care or treatment to prevent further disability or deterioration and a substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety and suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community.

WIS. STAT. § 51.20(1)(a)2.e. Monese agreed that Andrew's mental health was "having an impact on his ability to make decisions regarding … [his willingness] to accept treatment for [his] various different medical ailments" and that there was "a substantial probability that if left untreated, [Andrew] would lack the services necessary for his health or safety" and that he would "suffer severe mental, emotional, or physical harm, resulting in the loss of his ability to function independently within the community."

¶6 The trial court determined that the County met its burden of proof to show the requirements for recommitment and involuntary medication, making its oral ruling as follows:

> I think [the County] has met [its] burden of proof in this matter under the [fifth] standard. Clearly—or the only testimony we have, which the Court finds to be credible, is that of Dr. Monese, who indicates that [Andrew] is suffering from bipolar disorder, which is a substantial

> disorder of thought, mood, and perception, which grossly impairs his judgment, behavior, and ability to recognize reality when not under treatment; that if treatment were withdrawn, he would once again become a proper subject for commitment; that he doesn't have a proper understanding of the advantages and disadvantages of medication, which do have a therapeutic value and would not impair his ability to participate in future legal proceedings.
>
> I find that he's a proper subject for treatment and that he does not, as I said, understand the advantages and disadvantages of medication, and therefore, issue a medication order. I find that the least-restrictive placement at this point would be outpatient at WRC.

The court extended Andrew's commitment for an additional year and entered an order for the involuntary administration of medication and treatment. Both orders expire in January, 2024.

¶7      Andrew appeals, arguing that the County failed to show that he suffered from a mental illness and failed to introduce sufficient evidence (and the court failed to make specific factual findings) that he was dangerous under the fifth standard.

## DISCUSSION

¶8      Civil commitments require the petitioner (the County)[4] to establish by clear and convincing evidence that the subject individual is mentally ill, a proper subject for treatment, and dangerous to him/herself or others under at least one of five statutory standards. *D.J.W.*, 391 Wis. 2d 231, ¶29; WIS. STAT. § 51.20(1)(a)1.-2., (13)(e). This is especially critical because "[i]t may be true that

---

[4] Under WIS. STAT. ch. 51, county governments are given "primary responsibility for the well-being, treatment and care of the mentally ill." WIS. STAT. § 51.42(1)(b).

an erroneous commitment is sometimes as undesirable as an erroneous conviction." ***Addington v. Texas***, 441 U.S. 418, 428 (1979). "An individual's right to refuse unwanted medical treatment 'emanates from the common law right of self-determination and informed consent, the personal liberties protected by the Fourteenth Amendment, and from the guarantee of liberty in Article I, [S]ection 1 of the Wisconsin Constitution.'" ***Outagamie County v. Melanie L.***, 2013 WI 67, ¶42, 349 Wis. 2d 148, 833 N.W.2d 607 (alteration in original) (quoting ***Lenz v. L.E. Phillips Career Dev. Ctr.***, 167 Wis. 2d 53, 67, 482 N.W.2d 60 (1992)). Upon petition, a trial court may extend a commitment for up to one year. Sec. 51.20(13)(g)1.; ***D.J.W.***, 391 Wis. 2d 231, ¶31. The petitioner, in a recommitment, must still establish dangerousness under the statute. ***Sauk County v. S.A.M.***, 2022 WI 46, ¶5, 402 Wis. 2d 379, 975 N.W.2d 162; *see also* ***D.J.W.***, 391 Wis. 2d 231, ¶34.

¶9     Andrew was found to be mentally ill, treatable, and dangerous under the fifth standard. This complex and detailed statutory standard requires the petitioner to establish five elements. First, that the individual is not only mentally ill under WIS. STAT. § 51.01(13)(b),[5] but that there is "proof of a substantial probability of something more than impairment." ***State v. Dennis H.***, 2002 WI 104, ¶20, 255 Wis. 2d 359, 647 N.W.2d 851. The statute requires "proof of a substantial probability of a 'loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions.'" ***Id.*** (quoting WIS. STAT. § 51.20(1)(a)2.e.).

---

[5] WISCONSIN STAT. § 51.01(13)(b) defines mental illness as "a substantial disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life, but does not include alcoholism."

¶10     Our supreme court in ***Dennis H.*** summarized the remaining four elements of the fifth standard as follows:

> Second, the person who is the subject of the commitment petition must be incompetent to make medication or treatment decisions, or, more specifically, must be unable, "because of mental illness," to make "an informed choice as to whether to accept or refuse medication or treatment." WIS. STAT. § 51.20(1)(a)2.e. This must be evidenced either by an "incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives," or by a "substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness." ***Id.*** This must occur "after the advantages and disadvantages of and alternatives to accepting a particular medication or treatment have been explained to him or her." ***Id.***
>
> Third, the person must show a "substantial probability" that he or she "needs care or treatment to prevent further disability or deterioration." ***Id.*** This must be "demonstrated by both the individual's treatment history and his or her recent acts or omissions." ***Id.***
>
> Fourth, the person must evidence a "substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety." ***Id.***
>
> Fifth, the person must evidence "a substantial probability that he or she will, if left untreated, ... suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions." ***Id.***

***Dennis H.***, 255 Wis. 2d 359, ¶¶21-24 (alteration in original).

¶11     The review of a recommitment order—determining whether the petitioner has met the burden of proof—presents a mixed question of law and fact. ***Waukesha County v. J.W.J.***, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783. A trial court's findings of fact are upheld unless they are clearly erroneous, ***id.***, and an appellate court will "accept reasonable inferences from the facts."

*Winnebago County v. Christopher S.*, 2016 WI 1, ¶50, 366 Wis. 2d 1, 878 N.W.2d 109 (citation omitted). An appellate court may search the record for evidence to support the trial court's findings of fact. ***Becker v. Zoschke***, 76 Wis. 2d 336, 347, 251 N.W.2d 431 (1977). Whether those facts satisfy the statutory standards, however, is a question of law that is reviewed de novo. ***Marathon County v. D.K.***, 2020 WI 8, ¶18, 390 Wis. 2d 50, 937 N.W.2d 901.

¶12     Andrew asserts that the County failed to establish that he was mentally ill—both for the general purpose of an involuntary commitment and under the fifth standard. He also asserts, among other arguments, that the County failed to introduce sufficient evidence and the trial court failed to make the required specific factual findings with respect to dangerousness. This court disagrees with the first argument, but concludes that Andrew is correct on the second. There is, thus, no need to address his other arguments.

### I.     Andrew's mental illness was proven by the County.

¶13     As in his prior appeal,[6] Andrew argues that there is insufficient evidence to show that he suffered from a mental illness; rather, he asserts the only evidence was "Dr. Monese's conclusory statement that [Andrew]'s 'diagnosis is bipolar disorder, most recent episode severely depressed.'" This court disagrees.

¶14     Again, as in the prior appeal, Andrew did not raise this challenge to his mental illness at his trial. In fact, his counsel's sole argument to the trial court consisted of three sentences focusing on whether there was a full treatment plan for Andrew's needs. A party may not raise issues for the first time on appeal. *See*

---

[6] *See **Winnebago County v. A.P.D.**, No. 2022AP817, unpublished slip op. ¶10 (WI App Nov. 16, 2022), *review denied* (WI Feb. 21, 2023) (No. 2022AP817).

*State v. Mercado*, 2021 WI 2, ¶35, 395 Wis. 2d 296, 953 N.W.2d 337 (recognizing that appellate courts discourage attorneys from "sandbagging" the other side by not raising an issue before the trial court and then "alleging reversible error upon review."). For this reason, this court could conclude this issue without further discussion.

¶15 On the merits of this argument, however, it is clear that the trial court considered the testimony of Dr. Monese sufficient proof that Andrew suffered from a mental illness. Despite the fact that the County failed to introduce Dr. Monese's report into the record,[7] the trial court questioned the physician directly and concluded that his testimony was credible. Clearly, courts are not medical providers or physicians; instead they are required to rely on medical professionals' testimony on questions of medical expertise. This applies in mental commitment cases because "[w]hether a person is mentally ill is a *medical* judgment, made by applying the definition of mental illness in WIS. STAT. § 51.01(13)(b)." *Dennis H.*, 255 Wis. 2d 359, ¶19 (emphasis added; citation omitted).

¶16 Here, the trial court, exercising its discretion, listened to the testimony of Dr. Monese, heard the arguments of counsel (none of which addressed mental illness), found Dr. Monese's diagnosis to be credible, and reasonably concluded that Andrew did suffer from a mental illness both sufficient to warrant an involuntary commitment and to satisfy the first element of the fifth standard. There is nothing in the Record to indicate that this conclusion was

---

[7] As a general practice, any reports referenced during the trial testimony should be admitted into the record so that the appellate courts may review them. As noted in the next section, failure to do so prevents this court from discerning a basis upon which to support the trial court's findings.

clearly erroneous, thus, the finding of mental illness is not overturned. *See State v. Thiel*, 2003 WI 111, ¶23, 264 Wis. 2d 571, 665 N.W.2d 305.

## II.     Specific factual findings were not made by the trial court.

¶17     The fifth standard allows the County "to intervene with care and treatment before the deterioration [of an individual in need] reaches an acute stage, thereby preventing the otherwise substantially probable and harmful loss of ability to function independently or loss of cognitive or volitional control." *Dennis H.*, 255 Wis. 2d 359, ¶33. This court is cognizant of the idiosyncrasies that surround involuntary commitment proceedings:  they take place at a rapid pace, leaving trial courts with little time to rule; they concern extremely vulnerable individuals who most often do not recognize the danger to their personal safety or that of the community writ large; and they carry the awesome power to severely curtail an individual's liberty and personal rights.  To add into that mix rules that trial courts must use "magic words"[8] or recite voluminous statements of fact would not be appropriate.  Our supreme court, balancing all of the important and sometimes competing interests present in commitment proceedings, determined that trial courts must still do more than merely repeat the statutory language.[9]  *See D.J.W.*, 391 Wis. 2d 231, ¶40.

---

[8] *See State v. Brown*, 2020 WI 63, ¶27, 392 Wis. 2d 454, 945 N.W.2d 584 ("The law generally rejects imposing 'magic words' requirements.").

[9] The County contends that *Langlade County v. D.J.W.*'s holding is more akin to a "directive" that can be set aside if the trial court merely identifies, in some form or fashion, the statutory standard of dangerousness that it is relying upon for a commitment or recommitment. That belies the requirement our supreme court set out in *D.J.W.* to "make *specific factual findings with reference to* the subdivision paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based." *Langlade County v. D.J.W.*, 2020 WI 41, ¶40, 391 Wis. 2d 231, 942 N.W.2d 277 (emphasis added).

¶18 The key to this issue on appeal is an analysis of whether the trial court made "specific factual findings with reference to the subdivision paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based." **D.J.W.**, 391 Wis. 2d 231, ¶40. The **D.J.W.** court set out the rationale underlying this requirement. "First, it provides clarity and extra protection to patients regarding the underlying basis for a recommitment." **Id.**, ¶42. Civil commitments are significant curtailments of an individual's personal liberty and they can carry with them an additional deprivation of personal autonomy when accompanied with an involuntary medication and treatment order.

¶19 Second, as the **D.J.W.** court elaborated:

> a requirement of specific factual findings ... will clarify issues raised on appeal of recommitment orders and ensure the soundness of judicial decision making, specifically with regard to challenges based on the sufficiency of the evidence. *See* **Klinger v. Oneida** [**County**], 149 Wis. 2d 838, 846-47, 440 N.W.2d 348 (1989) ("[A]s this court has stated many times, the [trial] court must make a record of its reasoning to ensure the soundness of its own decision making and to facilitate judicial review."). A more substantial record will better equip appellate courts to do their job, further ensuring meaningful appellate review of the evidence presented in recommitment proceedings.

**D.J.W.**, 391 Wis. 2d 231, ¶44 (second alteration in original).

¶20 The trial court's findings were not bare bones; there were no bones mentioned at all.[10] This is problematic, but could have been ameliorated had the County moved Monese's report into the Record so this court could have possibly

---

[10] The County's reliance on the persuasive value of **Rock County v. J.J.K.**, No. 2020AP1085, unpublished slip op. (WI App Apr. 29, 2021) is misplaced. In Andrew's case, the trial court did not fail to identify the dangerousness paragraph in the statute that it relied upon, but rather it failed to link any facts to the paragraph identified.

discerned further bases supporting the trial court's ruling. Or, the County—realizing that the trial court's findings were not specific and did not more fully incorporate Monese's testimony—could have requested a more specific ruling from the trial court.[11] It did neither. That leaves this court with a ruling and Record that are bereft of the requisite facts.

¶21 In addition, the trial court's silence as to conclusions regarding whether Andrew was "incapable" of applying or expressing an understanding of his mental illness and treatment needs and whether such incapability was *because of* his mental illness mandates reversal. The trial court held only that Andrew "doesn't have a proper understanding of the advantages and disadvantages of medication." This was not sufficient given *D.J.W.*'s express requirement for specific factual findings.[12]

¶22 Pursuant to WIS. STAT. § 51.20(7)(c), and in order to facilitate prompt resolutions in civil commitments, there are strict, quick deadlines for a final hearing or jury trial on a petition for involuntary commitment. *See State ex rel. Lockman v. Gerhardstein*, 107 Wis. 2d 325, 328-29, 320 N.W.2d 27 (Ct. App. 1982). Those deadlines have long since passed and, due to its failure to comply with *D.J.W.* with respect to dangerousness specificity, the trial court now

---

[11] This court also recognizes that it may be difficult for counsel to respectfully seek additional findings, but notes that counsel could, first, elicit more detailed testimony from its witnesses. Moreover, trial courts truly want to make proper, detailed rulings that withstand appellate scrutiny and most will look favorably upon counsel's attempts to assist in that regard.

[12] The County also contends that a failure to make specific factual findings per *D.J.W.* is harmless error and that Andrew's "substantial rights were not affected by the [trial] court[']s failure to recite how specific facts applied to each element of the [fifth] standard when [the trial court] had just listened to all the uncontroverted testimony of the expert, found the expert to be credible and adopted the expert's opinion in its entirety." If this were correct, *D.J.W.* would be gutted because a trial court could summarily say "ditto" and commit an individual for up to one year.

lacks competency to conduct another evidentiary hearing in this matter. "Unlike a [trial] court's subject matter jurisdiction, which is established by the Wisconsin Constitution, competency may be affected by noncompliance with statutory requirements pertaining to the invocation of that jurisdiction in individual cases." *Sheboygan County v. M.W.*, 2022 WI 40, ¶35, 402 Wis. 2d 1, 974 N.W.2d 733 (footnote omitted). Therefore, remand is not a possibility and "outright reversal is the appropriate remedy." *Id.*, ¶34. Because the commitment order is reversed, the order for involuntary administration of medication and treatment must also be reversed since it can only exist if there is a valid commitment. *See* WIS. STAT. § 51.61(1)(g)3.

¶23    This court, having concluded that there were errors that warrant reversal, need not address the remaining arguments[13] on appeal. *Lakeland Area Prop. Owners Ass'n, U.A. v. Oneida County*, 2021 WI App 19, ¶17, 396 Wis. 2d 622, 957 N.W.2d 605 ([W]e need not address all arguments raised by the parties if one of those arguments is dispositive.").

## CONCLUSION

¶24    For the foregoing reasons, this court must reverse the trial court's order recommitting Andrew. Because that commitment order is reversed, the corresponding order for involuntary administration of medication and treatment is also reversed.

---

[13] For instance, the County's forfeiture argument is defeated by WIS. STAT. § 805.17(4) that allows challenges to the sufficiency of evidence on appeal even if not first raised before the trial court. *See also State v. Hayes*, 2004 WI 80, ¶54, 273 Wis. 2d 1, 681 N.W.2d 203.

*By the Court.*—Orders reversed.

This opinion will not be published. *See* W<small>IS</small>. S<small>TAT</small>. R<small>ULE</small> 809.23(1)(b)4.