COURT OF APPEALS
DECISION
DATED AND FILED

March 5, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1333**

Cir. Ct. No. **2023ME167**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF J.S.:

WINNEBAGO COUNTY,

PETITIONER-RESPONDENT,

V.

J.S.,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Winnebago County: TERESA S. BASILIERE, Judge. *Affirmed*.

¶1 LAZAR, J.[1] J.S., referred to herein by the pseudonym Jacob, appeals from orders for extension of his involuntary commitment under WIS. STAT. § 51.20(1)(a)2. and for the involuntary administration of medication and treatment under WIS. STAT. § 51.61(1)(g). Jacob asserts that, contrary to *Langlade County v. D.J.W.*, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277, the trial court failed to make specific factual findings of dangerousness with reference to a particular paragraph of § 51.20(1)(a)2. This court concludes that the trial court made sufficient factual findings to support commitment, and affirms.

## BACKGROUND

¶2 The circuit court[2] originally ordered Jacob committed to the care and custody of Winnebago County for a period of six months on June 8, 2023. Doctor Michael Vicente, the County's lead psychiatrist, examined Jacob on October 25, 2023. The County then filed a petition for recommitment on November 7, 2023. The trial court conducted a hearing on this requested extension of commitment on November 30, 2023.

¶3 Vicente was the first witness to testify at the hearing.[3] He opined that Jacob suffers from "unspecified schizophrenia spectrum and other psychotic disorders." This mental illness is a substantial disorder of thought, mood, and

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[2] The Honorable Daniel J. Bissett, referred to herein as the "circuit court," issued the initial order of commitment in June 2023. References to the trial court are to the Honorable Theresa S. Basiliere.

[3] The trial court also properly admitted into evidence the report Vicente authored after his examination of Jacob.

perception that grossly impairs Jacob's judgment, behavior, ability to recognize reality, and ability to meet the ordinary demands of life. Vicente testified that Jacob reported "he believed the neighbors below him were calling him a baby raper" which "led to more and more mood dysregulation to the point of suicidal thoughts on several occasions over the past year." Vicente believed Jacob's thoughts about his neighbors were not "reality-based" but rather the product of paranoia.

¶4 Vicente further testified that "[w]hen not under treatment," Jacob is a danger to himself or others. He recounted several instances of behavior that Jacob had admitted to him, including having thoughts about "throwing himself in front of a train" and "having law enforcement shoot him." He also stated that Jacob denies he has a mental illness and has a history of stopping treatment when he is not on a commitment. Vicente believed that Jacob was incapable of expressing or applying an understanding of the psychotropic medications prescribed for him; although the doctor explained the advantages, disadvantages, and alternatives of medication to Jacob, he told the doctor that "he didn't need the medications because he was not mentally ill."

¶5 Vicente's opinion was that, if left untreated, Jacob would have "paranoid ideation and auditory hallucinations" that would lead to "further threats against himself or others" and a loss of control over his impulses to act on suicidal and other threatening thoughts. Although Jacob had been hospitalized four times in the past year, Vicente testified that Jacob's mental illness is "treatable" and that "things have improved when he has been under treatment."

¶6 The County also called Officer Brent Wittman as a witness. Wittman testified that he had been dispatched to Jacob's home on July 3, 2023,

after Jacob's mother called to report that Jacob "had a hammer and [was] out of control." Wittman transported Jacob to the hospital on a mental health hold, where Jacob said "he wanted to overdose on drugs."

¶7 Finally, Jacob himself testified. He stated that he suffers from depression and anxiety, but did not list any other illnesses when asked about his mental health conditions. He also testified that he would continue to take the medications he was prescribed. He denied that he reported suicidal thoughts to Vicente.

¶8 The trial court found that the County met its burden to prove the requisite dangerousness for a one-year extension of commitment under WIS. STAT. § 51.20(1)(a)2.e and (1)(am). The court articulated its decision and its rationale as follows:

> Court finds, basically, upon the hearing that was held today and upon the Dr. Vicente's testimony, together with the officer's testimony, the Court finds that grounds for extension of the commitment have been established, that the subject here does have a mental illness as specified by the doctor, unspecified schizophrenia spectrum with psychosis.
>
> Court finds that there was testimony by the doctor, and with some substantiation of that testimony of the factors that the doctor was relying upon, indicating that [Jacob] was incompetent to take medication or treatment and dangerous because there was a substantial probability that he is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment, the alternatives ... to the treatment, and also incapable of applying an understanding of the advantages, disadvantages, and alternatives.
>
> Court does find that he does need treatment to prevent further disability. Again, the doctor testified of concerns if he was untreated. Also talked about decompensation when he was not treated.

> Court finds if untreated the subject will lack services necessary for his health, safety, and he will suffer – likely will suffer if left untreated. Severe mental, emotional, physical harm will result in a loss of his ability to function independently in a community or loss of volitional control over his thoughts. And, specifically, there was more testimony on the volitional control over his thoughts, which was the paranoia, delusions. There is no reasonable provision for his care or treatment in the community. And the Court finds that this is manifested both from [Jacob]'s treatment history and there is a substantial likelihood, based upon his treatment record, that he would be a proper subject for commitment if treatment were withdrawn.

> ….

> … I will not sign the order with the A and the B Standard in it. I will sign only the E Standard and the medication order.

¶9 Jacob appeals both orders, arguing that the trial court's factual findings underpinning its conclusion that he was dangerous under the WIS. STAT. § 51.20(1)(a)2.e. standard were "exceedingly sparse" and insufficient under *D.J.W.*, 391 Wis. 2d 231.

## DISCUSSION

¶10 To issue an order for an extension of commitment under WIS. STAT. ch. 51, a trial court must find by clear and convincing evidence that a subject individual meets the same three requirements necessary for an initial commitment: the individual is mentally ill, a proper subject for treatment, and dangerous. *Waukesha County v. J.W.J.*, 2017 WI 57, ¶¶18-20, 375 Wis. 2d 542, 895 N.W.2d 783. The review of a civil commitment order—determining whether the petitioner seeking recommitment has met its burden of proof to establish these three requirements—"presents a mixed question of law and fact." *Id.*, ¶15. A trial court's findings of fact are upheld "unless they are clearly erroneous," *id.*, and appellate courts will "accept reasonable inferences from the facts." *Winnebago*

5

*County v. Christopher S.*, 2016 WI 1, ¶50, 366 Wis. 2d 1, 878 N.W.2d 109 (citation omitted). Whether those facts satisfy the statutory standards, however, is a question of law that is reviewed de novo. *Marathon County v. D.K.*, 2020 WI 8, ¶18, 390 Wis. 2d 50, 937 N.W.2d 901.

¶11 Wisconsin law provides five different definitions of "dangerous" in subparagraphs a.-e. of WIS. STAT. § 51.20(1)(a)2. In addition, § 51.20(1)(am) provides that recommitment may be based on "a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." The *D.J.W.* court held that a trial court must "make specific factual findings with reference to the subdivision paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based." *D.J.W.*, 391 Wis. 2d 231, ¶40. That court also explained the "twofold" rationale behind this requirement. *Id.*, ¶42. "First, it provides clarity and extra protection to patients regarding the underlying basis for a recommitment." *Id.* Second, it facilitates judicial review, making it easier for appellate courts to determine whether there was sufficient evidence, for example, to support a particular type of dangerousness. *See id.*, ¶44; *see also Klinger v. Oneida County*, 149 Wis. 2d 838, 847, 440 N.W.2d 348 (1989) ("[T]he [trial] court must make a record of its reasoning to ensure the soundness of its own decision making and to facilitate judicial review.").

¶12 In this case, the trial court found Jacob dangerous under "the E Standard" (or fifth standard), meaning WIS. STAT. § 51.20(1)(a)2.e., and subdivision paragraph (1)(am). As our supreme court acknowledged in *State v. Dennis H.*, 2002 WI 104, ¶16, 255 Wis. 2d 359, 647 N.W.2d 851, this standard is "long and complex." The *Dennis H.* court broke it into five elements:

First, a person … must be mentally ill….

….

Second, the person … must be incompetent to make medication or treatment decisions, or, … must be unable, "because of mental illness," to make "an informed choice as to whether to accept or refuse medication or treatment" … "after the advantages and disadvantages of and alternatives to accepting a particular medication or treatment have been explained to him or her."

Third, the person must show a "substantial probability" that he or she "needs care or treatment to prevent further disability or deterioration." This must be "demonstrated by both the individual's treatment history and his or her recent acts or omissions."

Fourth, the person must evidence a "substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety."

Fifth, the person must evidence "a substantial probability that he or she will, if left untreated, … suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions."

*Id.*, ¶¶19-24 (citations omitted).

¶13     Jacob does not contest that the County introduced sufficient evidence to show each of the components of dangerousness under this standard, and indeed the combined testimony of Vicente and Wittman—as summarized above—supported each and every element. At issue is whether the trial court's factual findings were legally sufficient. This court concludes that, although—as the County concedes—the factual findings in this case certainly could have been more thorough, they were adequate.

¶14     This court has encouraged trial courts to communicate what evidence they relied upon, summarize testimony, tie the evidence to the standard,

and read from the standard order form for commitments—form ME-914 for commitments pursuant to the fifth standard—in issuing findings and conclusions in WIS. STAT. ch. 51 cases. *See* **Winnebago County v. B.R.C.**, No. 2023AP1842, unpublished slip op. ¶18 (WI App Feb. 14, 2024), *review denied*, 2024 WI 36, 11 N.W.3d 925. In Jacob's case, the trial court clearly and explicitly stated that it was relying upon the testimony from Vicente and Wittman. It then made several factual findings tied to the fifth standard, while apparently utilizing the standard order form in issuing its oral ruling.

¶15 With respect to the first element of the fifth standard, the trial court found that Jacob was mentally ill "as specified by the doctor, unspecified schizophrenia spectrum with psychosis." Next, regarding the element of Jacob's competence to decide on medication or treatment, the court again referred to the doctor's testimony. Although it did not summarize that testimony in any detail, it found that Jacob was not able to express the requisite understanding on this issue. This suggests that the court adopted Vicente's opinion, reflected in both his testimony and report, with respect to Jacob's ability to appreciate the advantages and disadvantages of medication and treatment. *See* **State v. Martwick**, 2000 WI 5, ¶31, 231 Wis. 2d 801, 604 N.W.2d 552 ("If a [trial] court fails to make a finding that exists in the record, an appellate court can assume that the [trial] court determined the fact in a manner that supports the [trial] court's ultimate decision.").

¶16 Moving on to the third and fourth elements of the fifth standard, the trial court referred to Vicente's "concerns" that Jacob would experience "decompensation when he was not treated"—*i.e.* "deterioration," *see* **Dennis H.**, 255 Wis. 2d 359, ¶22 (citation omitted)—and mentioned the loss of "volitional control over his thoughts" and "paranoia" that was in Jacob's history when he was

not receiving treatment, *see id.* ¶24. Finally, regarding the fifth element, the court mentioned Vicente's testimony about Jacob's delusions, which would result in him "suffer[ing] if left untreated."

¶17 It is clear in this case that the trial court found the petitioner's witnesses credible on all points, that there was no significant evidence pointing to contrary findings, and that the court explicitly identified the dangerousness definition in the fifth standard. In such a case, it is not necessary to "issue a complete compendium of all of the prior testimony." *See **B.R.C.***, No. 2023AP1842, ¶19. Ultimately, the court did enough (even if barely) to satisfy ***D.J.W.***; this court disagrees with Jacob that there is any doubt about which facts the trial court relied upon such that it would be "difficult to challenge the sufficiency of the evidence produced." *See **D.J.W.***, 391 Wis. 2d 231, ¶44.

¶18 Jacob does not make any arguments specific to the medication order on appeal. For the foregoing reasons, the orders regarding both Jacob's extension of commitment and involuntary administration of medication are affirmed.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.